ILE v FOREMOST INSURANCE COMPANY

Docket No. 295685. Submitted May 10, 2011, at Detroit. Decided July 14, 2011, at 9:00 a.m. Leave to appeal granted, 490 Mich 1004.

Debra Ile, as the personal representative of the estate of Daryl Ile, deceased, and on behalf of herself and others, brought an action in the Wayne Circuit Court against Foremost Insurance Company, alleging breach of contract and misrepresentation. Foremost issued the decedent a motorcycle insurance policy that bundled uninsured-motorist (UM) and underinsured-motorist (UIM) coverage. The policy provided UM and UIM coverage in an amount equal to the minimum liability coverage limits permitted under Michigan law and the decedent paid a single unallocated premium for the coverage. The decedent was killed when he struck a parked vehicle while driving the motorcycle insured by Foremost. Ile recovered the policy limit of $20,000 from Titan Insurance Company, the insurer of the parked vehicle, but sought to recover an additional $20,000 from Foremost under the decedent's policy. Foremost denied the claim on the basis that Ile had already received from Titan the maximum amount payable under the decedent's policy. Foremost moved for summary disposition, but the court, Robert J. Colombo, Jr., J., denied the motion and instead granted summary disposition in favor of Ile, concluding that the UIM coverage under the policy was illusory because no circumstances existed under which Foremost would have to pay benefits. Foremost appealed by leave granted.

The Court of Appeals *held*:

1. An illusory contract is an agreement in which one party gives as consideration a promise so insubstantial that it imposes no obligation, which renders the agreement unenforceable. The doctrine of illusory coverage is a rule requiring courts to interpret an insurance policy so that it is not merely an illusion to the insured.

2. The UIM coverage provided by the decedent's motorcycle insurance policy in an amount equal to the minimum liability coverage limits permitted under Michigan law, was illusory because under the policy's definitions, full limits for both UM and UIM benefits could not be collected under the policy. Having

elected UIM coverage equal to the statutory minimum liability coverage, the decedent could never have collected UIM benefits. An insurer cannot charge a premium for two conceptually distinct types of coverage if both types of coverage do not actually exist. The fact that a single premium was charged for two types of coverage was not determinative.

3. The trial court properly determined that Ile was entitled to recover up to the $20,000 policy limit for UIM coverage, to the extent her damages exceed those recovered from Titan. That resolution was consistent with the policy's restrictive clauses because it did not require Foremost to remit a duplicate payment for damages already compensated by Titan.

4. The illusory nature of the UIM contract language constituted a valid defense to the general rule that a contract must be enforced as written.

Affirmed.

Cavanagh, P.J., concurred in the result only.

1. Insurance — No-Fault — Underinsured- and Uninsured-Motorist Benefits.

Underinsurance benefit clauses are construed without reference to the no-fault act because that insurance is not required under the act (MCL 500.3101 *et seq.*).

2. Contracts — Defenses — Illusory Contracts.

An illusory contract is an agreement in which one party gives as consideration a promise that is so insubstantial that it imposes no obligation; this insubstantial promise renders the agreement unenforceable.

3. Insurance — Contracts — Interpretation — Doctrine of Illusory Coverage.

The doctrine of illusory coverage requires courts to interpret an insurance policy so that it is not merely an illusion to the insured; courts avoid interpreting insurance policies in such a way that the insured's coverage is never triggered and the insurer bears no risk.

*Law Offices of Paul Zebrowski & Associates* (by *Paul A. Zebrowski* and *Thomas A. Biscup*) for plaintiffs.

*Warner Norcross & Judd LLP* (by *Andrea J. Bernard, Michael G. Brady,* and *Jason L. Byrne*) for defendant.

Amicus Curiae:

*Willingham & Coté, P.C.* (by *John H. Yeager* and *Kimberlee A. Hillock*) for the Insurance Institute of Michigan.

Before: CAVANAGH, P.J., and TALBOT and STEPHENS, JJ.

TALBOT, J. Foremost Insurance Company challenges the trial court's grant of summary disposition in favor of Debra Ile (Ile), individually and as the personal representative of the estate of Darryl Ile (decedent), based on the trial court's determination that the underinsured-motorist (UIM) coverage in the motorcycle insurance policy purchased by the decedent from Foremost was an illusory contract and that Ile was entitled to recover up to a maximum $20,000 of under-insurance benefits for damages incurred exceeding the $20,000 already paid by another insurer. We affirm.

Foremost issued to the decedent a motorcycle insurance policy that included "bundled" uninsured-motorist (UM) and UIM coverage for the period of January 30, 2006, to January 30, 2007. The insurance policy provided UM and UIM coverage in an amount equal to the minimum liability coverage limits permitted under Michigan law of $20,000/$40,000.[1] Although Foremost offered higher limit options, the decedent selected this amount of coverage and paid a single, unallocated premium amount of $26 for UM/UIM coverage. Under the language of the policy, Foremost agreed to pay "compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' because of 'bodily injury' " and "compensatory damages which an 'insured' is le-

---

[1] MCL 500.3009(1).

gally entitled to recover from the owner or operator of an 'underinsured motor vehicle' because of 'bodily injury.' "

The Foremost insurance policy in part defines an "uninsured motor vehicle" as

a land motor vehicle or trailer of any type:

1. [t]o which no bodily injury liability bond or policy applies at the time of the accident.

2. [or] [t]o which a bodily injury liability bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be less than the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which 'your covered motorcycle' is principally garaged.

The policy language defines "underinsured motor vehicle" in relevant part as

a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage.

However, "underinsured motor vehicle" does not include any vehicle or equipment:

1. [t]o which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged.

Foremost sought to further limit the extent of its liability for payment by reiterating throughout the policy that it "will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible."

The factual circumstances leading up to this litigation are straightforward and undisputed. On June 18,

2006, the decedent was killed when he struck a parked vehicle while driving the motorcycle insured under the policy described above. Decedent's estate recovered the policy limit of $20,000 from Titan Insurance Company, the insurer of the parked vehicle.[2] Ile sought to recover an additional $20,000 from Foremost under the decedent's policy. Foremost denied the claim and declined any additional payment on the basis of Ile's already having received the maximum amount payable under the decedent's policy from the insurer of the parked vehicle. Ile initiated this litigation alleging breach of contract and misrepresentation. The trial court denied Foremost's motion for summary disposition, but granted summary disposition in favor of Ile.[3]

At the outset of its analysis, the trial court noted that because "it is undisputed that the language of the Policy is clear and unambiguous, the Court will focus solely on whether the underinsurance coverage is illusory." Citing caselaw from other jurisdictions, the trial court indicated with approval that those "courts have found underinsured motorist coverage to be illusory in scenarios where the injured person has the statutory minimum amount of underinsured motorist coverage and the tortfeasor, from the same state, has the statutory minimum amount of motor vehicle liability insurance coverage, and those two amounts are equal."[4]

The trial court found "that the underinsured motorists [sic] coverage under the Policy is illusory inasmuch as it provides no coverage whatsoever." Relying on the

[2] We are offered no explanation regarding why this insurer incurred liability for a *parked* vehicle.

[3] MCR 2.116(C)(10) and (I)(2).

[4] The court cited *Drapak v Aetna Cas & Surety Co*, 137 Misc 2d 156; 520 NYS2d 303 (NY Sup Ct, 1987); *Glazewski v Allstate Ins Co*, 126 Ill App 3d 401; 466 NE2d 1151 (1984), rev'd on other grounds 108 Ill 2d 243; 483 NE2d 1263 (1985).

insurance policy's definition of "underinsured motor vehicle," the trial court reasoned as follows:

> [I]f an insured selects limits of liability for coverage under the Policy which are the same as the minimum permissible liability limits under Michigan law, i.e., $20,000/$40,000, no other vehicle registered in Michigan could ever qualify as an underinsured motor vehicle as defined in the Policy. Moreover, the Policy would never provide underinsured motorists coverage when vehicles from other states having lesser mandatory minimum coverages are involved insofar as the Policy expressly excludes from the definition of underinsured motor vehicle any vehicle covered by insurance liability limits that are less than the minimum limit for bodily injury liability specified by Michigan. Thus, under no circumstances would Foremost have to pay underinsured motorists coverage under the Policy.

The trial court further determined that, contrary to Foremost's contention,

> it is apparent that the insurance premium payment incorporated at least some charge for underinsurance as the declarations page indicates that the premium for underinsurance under the Policy was included, and in setting the base rate for the $20,000/$40,000 uninsured/underinsured coverage in the Policy, [Foremost] took into account the aggregate of all losses over the entire uninsured/underinsured coverage. . . . Therefore, decedent paid a premium for underinsured motorists coverage purporting to provide him with underinsured motorists coverage of $20,000/$40,000, which . . . could never be paid.

This Court granted Foremost leave to appeal.[5]

We review de novo a trial court's decision to grant or deny summary disposition.[6] Similarly, the interpretation of an insurance contract constitutes a question of

---

[5] *Ile Estate v Foremost Ins Co*, unpublished order of the Court of Appeals, entered May 5, 2010 (Docket No. 295685).

[6] *Willis v Deerfield Twp*, 257 Mich App 541, 548; 669 NW2d 279 (2003).

law that we also review de novo.[7] "Uninsured motorist benefit clauses are construed without reference to the no-fault act because such insurance is not required under the act."[8]

The premise of Foremost's challenge to the trial court's holding is two-fold. First, Foremost contends that the UM/UIM policy coverage provided to decedent was not illusory because a policyholder is assured of receiving the benefits for which he or she paid. Foremost contends that numerous scenarios exist under which a policy holder having the $20,000/$40,000 liability coverage would receive benefits, precluding the trial court's determination that the contract was illusory. Second, Foremost argues that because the UM/UIM coverage was bundled it did not include a separate premium for UIM coverage. Because decedent was not charged an insurance premium that was attributable to UIM coverage, Foremost maintains that the trial court erred by concluding that decedent paid for coverage that will never result in the payment of benefits.

An "illusory contract" is defined as "[a]n agreement in which one party gives as consideration a promise that is so insubstantial as to impose no obligation. The insubstantial promise renders the agreement unenforceable."[9] A similar, more specific concept exists in the realm of insurance. The "doctrine of illusory coverage" encompasses "[a] rule requiring an insurance policy to be interpreted so that it is not merely a delusion to the insured. Courts avoid interpreting insurance policies in

---

[7] *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 353; 596 NW2d 190 (1999).

[8] *Twichel v MIC Gen Ins Corp*, 469 Mich 524, 533; 676 NW2d 616 (2004), citing *Rohlman v Hawkeye-Security Ins Co*, 442 Mich 520, 525; 502 NW2d 310 (1993).

[9] Black's Law Dictionary (9th ed), p 370.

such a way that an insured's coverage is never triggered and the insurer bears no risk."[10] We first address the trial court's determination that the UIM coverage in the Foremost policy was an illusory contract, which could not be enforced because it violated public policy.

"An insurance policy is enforced in accordance with its terms."[11] Because underinsured motorist benefits are not statutorily mandated in Michigan, we apply the general rules of contract interpretation in order to determine under what circumstances coverage must be provided.[12] To that end,

> [a]n insurance policy is much the same as any other contract. It is an agreement between the parties in which a court will determine what the agreement was and effectuate the intent of the parties. Accordingly, the court must look at the contract as a whole and give meaning to all terms. Further, "[a]ny clause in an insurance policy is valid as long as it is clear, unambiguous and not in contravention of public policy." This Court cannot create ambiguity where none exists.
>
> Exclusionary clauses in insurance policies are strictly construed in favor of the insured. However, coverage under a policy is lost if any exclusion within the policy applies to an insured's particular claims. Clear and specific exclusions must be given effect. It is impossible to hold an insurance company liable for a risk it did not assume.[13]

Our starting point is, therefore, the actual language of the policy issued by Foremost to decedent and the applicability of any specific exclusions in the policy.

---

[10] *Id.* at 554.

[11] *Twichel*, 469 Mich at 534, citing *Allstate Ins Co v McCarn*, 466 Mich 277, 280; 645 NW2d 20 (2002).

[12] *Auto-Owners Ins Co v Leefers*, 203 Mich App 5, 10-11; 512 NW2d 324 (1993).

[13] *Auto-Owners Ins Co v Churchman*, 440 Mich 560, 566-567; 489 NW2d 431 (1992) (citations omitted).

Within the policy, UIM coverage is tied to the definition of an "underinsured motor vehicle," which is in part

> a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage.

> However, "underinsured motor vehicle" does not include any vehicle or equipment

>    1. [t]o which a bodily liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged.

Based on this definition, an underinsured motor vehicle cannot be one covered by a bond or policy for "bodily injury liability" at a value "less than the minimum limit . . . specified by the financial responsibility law of the state" in which the decedent maintained his vehicle. When the policy definition of an "underinsured motor vehicle" is read in conjunction with the policy's definition of an "uninsured motor vehicle" (UM), because Michigan mandates a minimum coverage for bodily injury equal to the amount of decedent's policy of $20,000/$40,000, there exists no possibility for decedent to collect UIM benefits at the selected level of coverage.

As published caselaw is particularly scarce on this issue in Michigan, we follow the trial court's lead and undertake a review of this issue as it has been addressed by courts in other jurisdictions. Consistent with the trial court's determination, courts in Wisconsin have concluded that underinsured motorist policies that are equal to a state's mandatory statutory minimum coverage are illusory.[14] Specifically,

---

[14] Although the decisions of courts in other jurisdictions are not binding, they may serve as persuasive authority. *Ammex, Inc v Dep't of Treasury*, 273 Mich App 623, 639 n 15; 732 NW2d 116 (2007).

where a policy provides a definition of an underinsured motor vehicle that compares an insured's UIM policy limits to a tortfeasor's policy limits and the insured's policy limit is more than the statutory minimum . . ., then we will not review whether a reducing clause within the policy makes recovery of those UIM benefits illusory. However, we will examine whether a reducing clause makes recovery of those UIM benefits illusory when the insured's policy provides the same UIM benefits as the statutory minimum amount of liability insurance a driver may purchase in [the state]. In statutory minimum cases, a definition of underinsured motor vehicle which compares the insured's UIM limits with the tortfeasor's liability limits is against public policy because under those circumstances, the insured will have paid a premium for a type of coverage that will never be available, if the tortfeasor purchased insurance in [the state]. As a matter of law, that is a result contrary to the reasonable expectations of an insured.[15]

Simply stated, "[b]ecause the policy's limit is equal to the statutory minimum, . . . the policy will never provide excess coverage."[16] As such, courts have found that "[a] policy with UIM coverage 'under which no benefits will ever be paid' is illusory" because "it will never be triggered in practice."[17]

Like Michigan, the state of Montana does not have a statutory requirement regarding UIM coverage and has determined:

Public policy considerations that favor adequate compensation for accident victims apply to UIM coverage in spite of the fact that UIM coverage is not mandatory . . . . The purpose of underinsured motorist coverage is to provide a source

---

[15] *Taylor v Greatway Ins Co*, 233 Wis 2d 703, 715; 608 NW2d 722 (Wis App, 2000).

[16] *Janssen v State Farm Mut Auto Ins Co*, 266 Wis 2d 430, 437; 668 NW2d 820 (Wis App, 2003).

[17] *Ellifson v West Bend Mut Ins Co*, 312 Wis 2d 664, 672; 754 NW2d 197 (2008) (citations omitted).

of indemnification when the tortfeasor does not provide adequate indemnification. . . . [T]he principle that the insurance consumer's reasonable expectation is that UIM insurance provides *additional* coverage when the insured's damages exceed what is available from the tortfeasor . . . .[18]

Foremost contends that the cases cited relied on the "reasonable expectations doctrine," which is inapplicable in Michigan, as our Supreme Court has rejected its use as a "special rule" of contract construction.[19] Abrogation of the reasonable-expectations doctrine is not as absolute as implied by Foremost. While the doctrine "clearly has no application when interpreting an unambiguous contract," it is tempered by recognition that "courts are to enforce . . . agreement[s] as written absent some highly unusual circumstance, such as a contract in violation of law or public policy."[20] The trial court's opinion and reasoning in determining that this contract was illusory neither contravened nor ignored the rule that

[t]he judiciary may not rewrite contracts on the basis of discerned "reasonable expectations" of the parties because to do so "is contrary to the bedrock principle of American contract law that parties are free to contract as they see fit, and the courts are to enforce the agreement as written . . . ."[21]

The trial court explicitly relied on the language of the contract when it determined that, under the contractual definitions governing UIM and UM coverage, no

---

[18] *Hardy v Progressive Specialty Ins Co*, 315 Mont 107, 113-114; 67 P3d 892 (2003) (citations omitted).

[19] *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 62-63; 664 NW2d 776 (2003).

[20] *Id.* at 51, 63.

[21] *Burkhardt v Bailey*, 260 Mich App 636, 656-657; 680 NW2d 453 (2004), quoting *Wilkie*, 469 Mich at 51.

possible scenario could exist that would permit the decedent to collect UIM benefits with the specific level of coverage afforded by this policy. In reaching its decision, the trial court did not rely on the decedent's "reasonable expectation" when entering into the contract. Rather, it was the actual language of the contract that dictated the trial court's decision, which fully conformed to the rule of contract interpretation that a contract be enforced in accordance with its own written terms.[22] Further, a closer reading of the out-of-state cases cited reveals that the primary level of analysis was focused on the actual contract language presented. The concept of "reasonable expectation" was not addressed and did not come into play until a determination was made that the contract was illusory and violated public policy, which is not inconsistent with the ruling of our Supreme Court.[23]

In this instance, the declaration page of Foremost's policy with the decedent indicates "PART C — UNINSURED MOTORIST — UNINSRD/UNDERINSD MOTORIST $20,000 EA PERS/ $40,000 EA ACCIDENT $26.00." Such a provision is arguably deceptive because "[f]rom a consumer's point of view, a declarations page may be his or her only plain and simple source of information and, if misleading, is of no value. A declarations page which suggests coverage in an amount which is not actually available is misleading."[24] In accordance with the "doctrine of illusory coverage, '[l]iability insurance contracts should, if possible, be construed so as not to be a delusion to' the insured."[25] As such, the doctrine of

---

[22] *Universal Underwriters Ins Co v Kneeland*, 464 Mich 491, 496; 628 NW2d 491 (2001).

[23] *Wilkie*, 469 Mich at 51.

[24] *Hardy*, 315 Mont at 114.

[25] *Jostens, Inc v Northfield Ins Co*, 527 NW2d 116, 118 (Minn App, 1995) (citation omitted).

illusory coverage is applicable "where part of the [insurance] premium is specifically allocated to a particular type or period of coverage and that coverage turns out to be functionally nonexistent."[26] Foremost's reliance on California caselaw to support its argument that the contract is not illusory is unavailing. Unlike Michigan, California has a statutory mandate requiring a minimum level of UIM coverage, which has led to the determination that "[w]hen an insurance company offers coverage mandated by law, in words which parallel the language of the statute, it is logically impossible to charge the insurance company with offering an illusory contract, when the contract offered is mandated."[27]

Foremost contends that the coverage is not illusory because situations exist that will permit the recovery of UM benefits, which are "bundled" with the UIM coverage. "UIM coverage is illusory only if there are no circumstances under which benefits will ever be paid under the policy."[28] In other words, according to Foremost, because the insured could potentially recover benefits based on the UM portion of the contractual provision, coverage cannot be construed to be illusory. Specifically, Foremost acknowledges that in Michigan, for policies equal to the statutory minimum of $20,000/$40,000, coverage is exclusively for UM benefits.[29] This argument is disingenuous. While "UIM coverage is not illusory where there are circumstances that can be reasonably foreseen in which the coverage

[26] *Id.* at 119.

[27] *Fagundes v American Int'l Adjustment Co*, 2 Cal App 4th 1310, 1317; 3 Cal Rptr 2d 763 (1992).

[28] *Ellifson*, 312 Wis 2d at 674 (citation omitted).

[29] Foremost's employee, Randall C. Sellhorn, answered, "That's correct," at his deposition when asked, "All other things being equal, when a person purchases 20/40 UM/UIM limits . . . there is only a possibility to recover under -- uninsured motorist, is that fair to say?"

will pay,"[30] it is clear in this case that any payment
under the policy, at the specified level of coverage, is
solely for UM benefits. Contrary to Foremost's conten-
tion that bundling of the two types of insurance, UM
and UIM, renders the coverage functionally equivalent,
caselaw has found "the two types of coverage are
conceptually distinct."[31] As a result,

> an insurer cannot charge a premium for two conceptually
> distinct types of coverage, at a presumably higher rate than
> would be charged for one type of coverage, if both types of
> coverage do not actually exist. Furthermore, the fact that a
> single premium is charged for two types of coverage is not
> determinative.[32]

Given the policy limits elected by the decedent, UIM
coverage was illusory as the full limits for both UM and
UIM benefits could not be collected under the policy.
This is not, as implied by Foremost, a matter of over-
lapping coverage because under this policy the decedent
could not ever have received or collected UIM benefits.

"We have defined an illusory contract as one where 'a
premium was paid for coverage which would not pay
benefits under any reasonably expected set of circum-
stances.' "[33] Foremost attempts here to superimpose
factually distinguishable or separate situations recog-
nized in caselaw and assert that they are interchange-
able. Contrary to Foremost's position, an inherent
distinction exists between those cases that recognize a
possibility of recovering UIM benefits under a policy,

---

[30] *Ellifson*, 312 Wis 2d at 674 (citation omitted).

[31] *Western Reserve Mut Cas Co v Holland*, 666 NE2d 966, 969 (Ind App,
1996).

[32] *Id.*

[33] *Gillund v Meridian Mut Ins Co*, 323 Wis 2d 1, 18; 778 NW2d 662 (Wis
App, 2009), citing *Link v Gen Cas Co of Wisconsin*, 185 Wis 2d 394, 400;
518 NW2d 261 (Wis App, 1994).

albeit very slight,[34] and the situation here in which there is no possibility of recovering UIM benefits, only UM benefits. The trial court was not persuaded by Foremost's contention that as long as the policy guaranteed that the decedent would receive the contracted-for amount of protection (whether from Foremost or another insurer), it could not be interpreted as illusory. This argument is merely the use of smoke and mirrors. Caselaw does exist indicating that "[a] guarantee by [the insurer] of a minimum recovery is not an illusory protection, nor is it harsh to enforce a contract between an insurer and insured that guarantees [the] insured will recover, from some source, the amount of insured's damage up to the limit of UIM coverage."[35] Foremost ignores, however, that the insured is not, by the terms of its own policy, collecting UIM benefits, but is only eligible to receive UM benefits, making such cases factually distinguishable.

Foremost contends that the bundling of UM and UIM coverage in the policy with the payment of an unallocated premium is contrary to the trial court's finding that decedent was charged a separate amount within the premium for UIM coverage. Although the policy does not separate out specific premium amounts to reflect UM versus UIM coverage, the consideration and inclusion of both types of losses in determining the base rate to set premiums necessarily implies that some portion of the overall premium is influenced by and attributable to UIM coverage. This is consistent with the testimony of Foremost's employee, Randall C. Sellhorn, who described the process by which base rates and premiums are determined by considering the ag-

---

[34] For example, see *Vincent v Safeco Ins Co of America*, 136 Idaho 107, 112; 29 P3d 943 (2001).

[35] *Melton v Country Mut Ins Co*, 75 SW3d 321, 327 (Mo App, 2002).

gregation of losses incurred for both UM and UIM coverage pertaining to motorcycles in Michigan.

Further, whether the decedent "*actually* paid a premium for underinsurance is irrelevant."[36] Because the declarations page of the policy suggested that the premium encompassed UIM coverage in addition to or along with UM coverage, the decedent "could reasonably believe that his insurance premium payment included some charge for underinsurance."[37] As noted previously, "the fact that a single premium is charged for two types of coverage is not determinative."[38]

Foremost also takes issue with the trial court's award to Ile of an unspecified amount to a maximum of $20,000 of underinsurance for damages incurred exceeding the $20,000 already received from another insurer. There are two recognized, but conflicting, theories pertaining to "the purpose and function of UIM coverage."[39] Specifically,

[u]nder the first theory, the purpose of UIM coverage is to compensate an insured accident victim when the insured's damages exceed the recovery from the at-fault driver (or other responsible party). According to this theory, UIM coverage operates as a separate fund, available for the payment of the insured's uncompensated damages. . . .

The second theory is that "the purpose of underinsured motorist coverage is solely to put the insured in the same position as he [or she] would have occupied had the tortfeasor's liability limits been the same as the underinsured motorist limits purchased by the insured." Under this theory, UIM coverage operates as a predetermined,

---

[36] *Landis v American Interinsurance Exch*, 542 NE2d 1351, 1354 n 1 (Ind App, 1989).

[37] *Id.*

[38] *Western Reserve*, 666 NE2d at 969.

[39] *Badger Mut Ins Co v Schmitz*, 255 Wis 2d 61, 70; 647 NW2d 223 (2002).

fixed level of insurance coverage including payment from both the at-fault driver's liability insurance and the insured's own UIM coverage.[40]

As a result,

> [n]ot surprisingly, in virtually every case, the insurer has asserted that UIM coverage functions as a predetermined, fixed level of insurance coverage including payment from both the at-fault driver's liability insurance and the insured's own UIM coverage, and the reducing clause reduces the limit of UIM liability. Correspondingly, in virtually every case, the insured has asserted that UIM coverage is intended as excess coverage available when an insured's damages exceed the recovery from the at-fault driver, and the reducing clause decreases the insured's covered damages.[41]

In similar cases, courts have fashioned a remedy consistent with that of this trial court premised on the concept that policy provisions should be enforced in order "to give effect to the reasonable expectation of the insured."[42] Because it would have been reasonable for the decedent to believe that he had $20,000 of UIM coverage under the policy, damages exceeding the amount remitted by the tortfeasor's policy, up to the $20,000 limit of the decedent's UIM coverage, "should be paid by the insurer."[43] This result does not run afoul of the disfavor of use of the reasonable-expectations doctrine given the violation of public policy by this insurance policy because it is illusory.

The trial court's resolution was not inconsistent with the restrictive clauses in the policy. Specifically, with regard to the UIM coverage, the policy provides:

---

[40] *Id.* at 70-71 (citations omitted; alteration in original).

[41] *Id.* at 72.

[42] *Landis*, 542 NE2d at 1354.

[43] *Western Reserve*, 666 NE2d at 968, citing *Landis*, 542 NE2d at 1353-1354.

LIMIT OF LIABILITY

A. The limit of liability shown . . . is our maximum limit of liability for all damages . . . . sustained by any one person in any one accident . . . .

B. The limit of liability shall be reduced by all sums paid because of the 'bodily injury' by or on behalf of persons or organizations who may be legally responsible . . . .

C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage . . . .

D. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

In addition, the policy contains the following provision pertaining to UIM coverage:

OTHER INSURANCE

If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided by this endorsement:

1. Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis.

\* \* \*

3. If the coverage under this policy is provided:

a. On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.

b. On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our

limit of liability bears to the total of all applicable limits of
liability for coverage provided on an excess basis.

The trial court's resolution was consistent with the
policy language as the court did not require Foremost to
remit a duplicate payment for damages already compen-
sated by another insurer. Rather, the trial court treated
the policy as only providing additional or excess cover-
age, dependent on Ile's proofs, that damages exceeded
the payments already remitted by Titan and restricted
to a possible maximum in accordance with the $20,000
limits of the policy. This was consistent with the policy
language precluding duplicate payments for "any ele-
ment of loss for which payment has been made under
this coverage" and the imposition of liability only at-
tributable to Foremost's "share of the loss," which is
defined as "the proportion that our limit of liability
bears to the total of all applicable limits."

Finally, we address the amicus curiae brief filed by
the Insurance Institute of Michigan. The institute pos-
its two issues for consideration: (a) that the determina-
tion that a policy is illusory does not constitute a basis
for the imposition of the judicial remedy of contract
reformation and (b) that the trial court could not rely
on extrinsic evidence, such as the deposition statements
of Foremost's agent, Sellhorn, to invalidate an unam-
biguous policy. At the outset, we can dispose of this
second argument by noting the reasoning and language
of the trial court in finding the contract at issue to be
illusory. The written opinion of the trial court clearly
delineated that the basis for its determination that the
contract was illusory was premised solely on the actual
language of the contract that served to preclude the
possibility of any situation arising that would have
permitted the decedent, under this policy, to ever be
eligible to receive UIM benefits. The trial court referred

to Sellhorn's testimony only to address Foremost's
contention that the bundling of the UIM and UM
coverage precluded a finding that the contract was
illusory, not to actually determine the illusory nature of
the contract.

With regard to the first argument, we note that the
institute's primary premise contesting the trial court's
ruling is that it constituted a reformation of the contract
infringing on the authority of the Commissioner of the
Office of Financial and Insurance Regulation to approve
insurance contract language. To the extent that the insti-
tute is raising a jurisdictional issue, it is contrary to the
Michigan Rules of Court governing appellate briefs.[44] This
jurisdictional argument is precluded because an amicus
curiae brief "is limited to the issues raised by the
parties."[45] Since this argument was not raised by either
Foremost or Ile, we need not address it as it improperly
expands the scope of the appeal.

In its reply brief Foremost seeks to "agree[] . . . and
incorporate[] by reference the two arguments ad-
vanced" by the institute. We find this to comprise both
a lazy and sloppy effort on the part of Foremost's
counsel because they never raised the argument them-
selves and made only a cursory attempt to discuss the
issues presented by the institute. In effect, Foremost
simply closes its eyes and hopes that the institute's aim
is accurate. We also find it to be deceptive on the part of
Foremost to so belatedly attempt to incorporate these
arguments, particularly in this manner, as only Ile was
permitted by this Court to submit a reply to the
institute's brief.[46] Foremost's attempt to ride the coat-

---

[44] MCR 7.212(H)(2).

[45] *Id.*

[46] *Ile Estate v Foremost Ins Co*, unpublished order of the Court of
Appeals, entered December 15, 2010 (Docket No. 295685).

tails of the institute by inappropriately seeking to incorporate the contents of the amicus curiae brief, without either having raised those same issues or procuring permission to even respond to the institute's brief, is unacceptable to this Court.

Because of our concerns regarding the manner in which the issue was raised, we remanded the matter to the trial court for an opportunity to evaluate the position asserted by the institute.[47] Specifically, we afforded the trial court the opportunity to address the institute's argument that a recent holding of our Supreme Court[48] "requires enforcement of the insurance contract as written." Following supplemental briefing by the parties, the trial court engaged in additional fact finding and determined:

> [T]he underinsured motorist (UIM) provisions in the . . . deceased's policy were drafted and supplied for [Foremost's] use by the Insurance Services Office, Inc., (ISO) a professional consulting and supporting organization that serves insurers throughout the United States. [Foremost] used the UIM language only after it was informed that it had been submitted to the OFIR and had been authorized for use in Michigan automobile policies.

The trial court found recent decisions by our Supreme Court applicable and stated that caselaw required the court to "construe and apply an unambiguous contract provision as written unless a contract provision violates law or one of the traditional defenses to the enforceability of a contract."[49] The trial court determined that the illusory nature of the contract constituted a valid de-

---

[47] *Ile Estate v Foremost Ins Co*, unpublished order of the Court of Appeals, entered May 10, 2011 (Docket No. 295685).

[48] *Rory v Continental Ins Co*, 473 Mich 457; 703 NW2d 23 (2005).

[49] Citing *id.* at 461, 470; *McDonald v Farm Bureau Ins Co*, 480 Mich 191; 747 NW2d 811 (2008).

fense to its enforcement and that the defense was an exception to the requirement that an unambiguous contract be enforced as written. This Court concurs.

Addressing the enforceability of shortened limitations periods in insurance contracts, our Supreme Court noted:

> [I]nsurance policies *are* subject to the same contract construction principles that apply to any other species of contract. . . . [U]nless a contract provision violates law or one of the traditional defenses to the enforceability of a contract applies, a court must construe and apply unambiguous contract provisions as written.
>
>        \*    \*    \*
>
> [I]n addition to these traditional contract principles, . . . the Legislature has enacted a statute that permits insurance contract provisions to be evaluated and rejected on the basis of "reasonableness." The Legislature has explicitly assigned this task to the Commissioner of the Office of Financial and Insurance [Regulation] (Commissioner) rather than the judiciary. The Commissioner has allowed the . . . insurance policy form to be issued and used in Michigan.[50]

Specifically, the Court indicated "that the judiciary is without authority to modify unambiguous contracts or rebalance the contractual equities struck by the contracting parties because fundamental principles of contract law preclude such subjective post hoc judicial determinations of 'reasonableness' as a basis upon which courts may refuse to enforce unambiguous contractual provisions."[51] The Court opined that any other outcome would be " 'contrary to the bedrock principle of American contract law that parties are free to con-

---

[50] *Rory*, 473 Mich at 461.

[51] *Id.*

tract as they see fit, and the courts are to enforce the
agreement as written absent some highly unusual cir-
cumstance such as a contract in violation of law or
public policy.' "[52] Yet while the Court determined that
"[a] mere judicial assessment of 'reasonableness' " con-
stituted "an invalid basis upon which to refuse to
enforce contractual provisions," it continued to recog-
nize that "traditional contract defenses may be used to
avoid the enforcement of [a] contract provision."[53] This
is the distinction on which the trial court relied. In
ruling that the UIM coverage provision in this case was
unenforceable, the trial court based its finding on its
determination that the provision was subject to the
traditional contract defense of constituting an illusory
promise.

As discussed by our Supreme Court, we recognize
that "the Legislature has assigned the responsibility of
evaluating the 'reasonableness' of an insurance con-
tract to the person within the executive branch charged
with reviewing and approving insurance policies: the
Commissioner of [the Office of Financial and] Insur-
ance [Regulation]."[54] Consequently, "courts have a very
limited scope of review concerning the decisions made
by the Commissioner," and "the explicit 'public policy'
of Michigan is that the reasonableness of insurance
contracts is a matter for the executive, not judicial,
branch of government."[55] But this preclusion is not
relevant in this instance, as the trial court based its
determination regarding enforceability not on the con-

---

[52] *Id.* at 469, quoting *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 51-52;
664 NW2d 776 (2003).

[53] *Rory*, 473 Mich at 470.

[54] *Id.* at 475; see also MCL 500.2236; *Ulrich v Farm Bureau Ins*, 288
Mich App 310, 317-318; 792 NW2d 408 (2010), citing *Rory*, 473 Mich at
468-469, 474-475.

[55] *Rory*, 473 Mich at 475-476.

cept of "reasonableness," but on the applicability of the contractual defense of an illusory promise. Recognized as an affirmative defense, "[a]n illusory promise is one where the promisor is 'not obligated to do anything in consideration of' the other party's promise or performance."[56] "With an illusory promise, a purported contract will lack the necessary mutual obligation."[57]

The institute's reliance on the cited decisions of our Supreme Court is misplaced and seeks to expand the actual holdings to permit the commissioner's determination to encompass or supersede all challenges to contract validity, not simply those premised on the concept of "reasonableness." As noted within the very case relied on by the institute, "[a] party may avoid enforcement of a[] . . . contract only by establishing one of the traditional contract defenses . . . ."[58] This distinction recognizes the lines drawn by the Legislature's assigning responsibility for evaluating the reasonableness of insurance contracts while balancing the obligation of the judiciary to adhere to the principles of law involving the freedom to contract and the enforceability of unambiguous contractual language. The trial court's reasoning and ruling do not violate this dichotomy.

Affirmed.

STEPHENS, J., concurred with TALBOT, J.

CAVANAGH, P.J. (*concurring*). I concur in the result only.

---

[56] *Amerisure Mut Ins Co v Carey Transp, Inc*, 578 F Supp 2d 888, 921 (WD Mich, 2008); see also *Mastaw v Naiukow*, 105 Mich App 25, 29; 306 NW2d 378 (1981).

[57] *Amerisure Mut*, 578 F Supp 2d at 921, citing *Hess v Cannon Twp*, 265 Mich App 582, 592; 696 NW2d 742 (2005).

[58] *Rory*, 473 Mich at 489.