# STATE OF MICHIGAN
# COURT OF APPEALS

EMPLOYERS MUTUAL CASUALTY
COMPANY,

UNPUBLISHED
September 7, 2017

Plaintiff/Counter-Defendant-
Appellee,

v

No. 322215
Wayne Circuit Court
LC No. 12-002767-CK

HELICON ASSOCIATES, INC. and ESTATE OF
MICHAEL J. WITUCKI,

Defendants/Counter-Plaintiffs,

and

DR. CHARLES DREW ACADEMY and
JEREMY GILLIAM,

Defendants,

and

WELLS FARGO ADVANTAGE NATIONAL
TAX FREE FUND, WELLS FARGO
ADVANTAGE MUNICIPAL BOND FUND,
LORD ABBETT MUNICIPAL INCOME FUND,
INC. and PIONEER MUNICIPAL HIGH
INCOME ADVANTAGE,

Defendants-Appellants.

ON REMAND

Before: METER, P.J., and FORT HOOD and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendants Wells Fargo Advantage National Tax Free Fund, Wells Fargo Advantage Municipal Bond Fund, Lord Abbett Municipal Income Fund, Inc., and Pioneer Municipal High Income Advantage ("the Funds") previously appealed by right the order granting summary disposition in favor of plaintiff Employers Mutual Casualty Company ("EMC"). We affirmed on

-1-

the basis of the "fraud or dishonesty" exclusion in the insurance policy issued by EMC and, consequently, did not address any other exclusions. *Employers Mut Cas Co v Helicon Assoc, Inc* (*Helicon I*), 313 Mich App 401; 880 NW2d 839 (2015). Our Supreme Court reversed that determination and remanded for consideration of the remaining policy exclusions. *Employers Mut Cas Co v Helicon Assoc, Inc* (*Helicon II*), ___ Mich ___; 894 NW2d 545 (2017). We again affirm.

The insurance policy was issued by EMC to defendants Helicon Associates, Inc (Helicon) and Michael J. Witucki. The Dr. Charles Drew Academy (Drew), a charter school operated by Helicon, which in turn was managed by Witucki, issued bonds that the school was not authorized to issue. Drew did so by issuing bonds for another charter school, Crescent Academy (Crescent), which was also managed by Helicon. The Funds purchased approximately $7 million in those bonds. When the chartering institutions learned of the "conduit financing scheme," they threatened to revoke the schools' charters, and the bonds had to be "unwound." The Funds pursued an action in federal court that ultimately concluded in a consent judgment. Pursuant to the consent judgment, Helicon and Witucki acknowledged that they had violated Conn Gen Stat 36b-29(a)(2), part of the Connecticut Uniform Securities Act (CUSA). The Funds were awarded significant damages. EMC provided a defense for Helicon and Witucki in the federal action under a reservation of rights, and it pursued the instant declaratory judgment action seeking to establish that it did not owe Helicon and Witucki indemnification because of four separate exclusions in the insurance policy: return of remuneration, personal profit or advantage, guarantee on bonds, and fraud or dishonesty.

As discussed, we previously determined that the fraud or dishonesty exclusion applied, and we therefore did not address whether any of the remaining exclusions were relevant. Our Supreme Court determined that because the judgment underlying this matter imposed liability based on a statutory violation, Conn Gen Stat § 36b-29(a)(2), premised on "allegations of negligent misrepresentations and omissions," the "fraud or dishonesty" exclusion in the insurance policy was not triggered. *Helicon II*, ___ Mich at ___ (slip op at 2). Specifically, the Court found that "the judgment did not amount to 'a determination that acts of fraud or dishonesty were committed by the "insured," ' such that coverage for it was barred by the 'fraud or dishonesty' exclusion." *Id.*

Although not denying that Helicon and Witucki were "insureds" under the relevant policies, plaintiff claimed that exclusions in the Linebacker Policy precluded coverage. Specifically, plaintiff cited to and relied on the following exclusions in seeking summary disposition in its favor:

This policy does not apply to:

A.  "Wrongful Acts"[1] based upon or attributable to an "insured(s)" gaining any personal profit or advantage to which an "insured(s)" is not legally entitled.

B.  The return of any remuneration paid to an "insured" if such payment is held by the courts to be in violation of the law.

C.  Any action brought against an "insured" if by judgment or adjudication such action was based on a determination that acts of fraud or dishonesty were committed by the "insured."

* * *

P.  Any "wrongful act" of an "insured" in connection with:

1.  Any tax assessment or adjustments, or

2.  The collection, refund, disbursement or application of any taxes, or

3.  Failure to anticipate tax revenue short falls.

4.  Guarantees on bond issues.  [Footnote added.]

The parties concurred that if coverage for liability imposed on Helicon and Witucki was excluded by the Linebacker Policy, then coverage would also be excluded under the Umbrella Policy.  It is also not disputed that coverage would be excluded if any of the exclusions apply.

Previously, we concluded that Helicon and Witucki had made "untrue" statements and representations resulting in a statutory violation, so they ran afoul of the "acts of fraud or dishonesty" prohibition in the policy.  Our Supreme Court, as noted, disagreed and remanded to this Court to consider the other policy exclusions.  As we previously stated:

> A grant or denial of summary disposition is reviewed de novo on the basis of the entire record to determine if the moving party is entitled to judgment as a matter of law.  *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).  When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, this Court considers all evidence submitted by the parties in the light most favorable to the nonmoving party.  A grant of summary disposition is proper only when the evidence fails to establish a genuine issue regarding any material fact.  *Id*. at 120.

---

[1] "Wrongful Acts" are defined in the policy to mean "any of the following:"  (1)  "Actual or alleged errors," (2) Misstatement or misleading statement," and (3) Act of omission or neglect or breach of duty by an 'insured.'"  "All wrongful acts contained within the same claim or 'suit' shall be deemed one 'wrongful act' and such interrelated 'wrongful acts' shall be deemed to occur at the time of the first 'wrongful act.'"

In addition, questions of contract interpretation are reviewed de novo. *Burkhardt v Bailey*, 260 Mich App 636, 646; 680 NW2d 453 (2004). Courts enforce contracts in accordance with their terms, giving the contractual words their plain and ordinary meanings. *Reicher v SET Enterprises, Inc*, 283 Mich App 657, 664; 770 NW2d 902 (2009). "An unambiguous contractual provision reflects the parties['] intent as a matter of law, and '[i]f the language of the contract is unambiguous, we construe and enforce the contract as written.'" *Id*. (citation omitted) (second alteration in original). "'The primary goal in the construction or interpretation of any contract is to honor the intent of the parties' . . ." *Stone v Auto-Owners Ins Co*, 307 Mich App 169, 174; 858 NW2d 765 (2014) (citation omitted). Insurance contracts are generally treated the same as any other contract, but it is incumbent on an insured to show coverage and incumbent on the insurer to show that an exclusion applies. *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377-378; 836 NW2d 257 (2013).

Therefore, we now consider whether any of the remaining exclusions regarding (a) return of remuneration, (b) personal profit or advantage, and (c) guarantee on bonds, which were raised in the initial appeal and contained in plaintiff's Linebacker insurance policy with Helicon and Witucki, are applicable and would serve to preclude coverage.

Because, as we will discuss, we find the personal profit or advantage exclusion applicable, we only briefly discuss our findings that the trial court erred in applying the guarantee on bonds exclusion and partially erred in applying the return of remuneration exclusion.

The word "guarantee" is not defined in the policy. We therefore give the word its plain and ordinary meaning by reference to a dictionary. See *Fremont Ins Co v Izenbaard*, 493 Mich 859; 820 NW2d 902 (2012). Several such meanings are possible, including the formal assumption of a suretyship obligation, granting some form of security, or simply promising that some act will be executed. See *Black's Law Dictionary* (10th ed). Because there are several possible definitions, we resort to the general rule that where it is necessary to construe a contract, any facial ambiguities are to be construed against the insurer. *Farm Bureau Mut Ins Co of Mich v Moore*, 190 Mich App 115, 118; 475 NW2d 375 (1991). We find that the trial court therefore erred in using the most expansive possible definition of "guarantee."

The language of the return of remuneration exclusion is not a model of clarity, but when read in conjunction with the statute under which Helicon and Witucki were deemed liable, the provision is only partially applicable. The statute states in relevant part that individuals making false or misleading statements or omissions in the offering or sale of securities are "*liable to the person buying the security, who may sue either at law or in equity to recover the consideration paid for the security*, together with interest . . . , costs and reasonable attorneys' fees . . ." Conn Gen Stat § 36b-29(a)(2) (emphasis added). Because the consent judgment is based on a violation of this statutory provision, the damages awarded must be consistent with that delineated as encompassing "consideration paid for the security." In turn, the exclusion precludes coverage for "[t]he return of any remuneration paid to an 'insured' if such payment is held by the courts to be in violation of the law."

Given the basis for the damages awarded, at least a part of the award comprises compensation to the Funds for monies paid for the bonds. However, as acknowledged by plaintiff the damages awarded to the Funds exceeds the loss to "recover the consideration paid for the security." As such, the exclusion does not preclude all coverage for the damages awarded; only that which comprises or is attributable to the monies received by Helicon and Witucki, which was derived from the consideration paid by the Funds to obtain the bonds. Ultimately, however, because we determine that the personal profit or advantage exclusion serves to preclude coverage, the applicability of this exclusion is rendered irrelevant and moot.

The personal profit or advantage provision of the Linebacker policy precludes coverage for: "'Wrongful Acts[2]' based upon or attributable to an 'insured(s)' gaining any personal profit or advantage to which an 'insured(s)' is not legally entitled." There is no dispute that Helicon and Witucki received a personal profit or advantage from the bond issue. The Funds argue that the exclusion only applies if an insured's personal profit or advantage is a *necessary element* of the asserted "wrongful act," and that the profit realized by Helicon and Witucki was merely incidental. The Funds contended that the federal court consent judgment was premised on false statements involved in the offering or sale of the bonds and not based on the profit that may have arisen as a result thereto, thus distinguishing a profit that is itself illegal from a profit that is a by-product of an illegal act. Under such a distinction, the Funds assert that the exclusion would be inapplicable here.

Helicon and Witucki misrepresented the profitability of Crescent and actively took steps to conceal Crescent's cash flow problems by hiding the losses in contrived equipment leases, in addition to failing to disclose the fact that they had conflicts of interest. In relevant part, Conn Gen Stat § 36b-29(a)(2) provides:

> *(a) Any person who . . . offers or sells or materially assists any person who offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, who knew or in the exercise of reasonable care should have known of the untruth or omission, the buyer not knowing of the untruth or omission, and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission, is liable to the person buying the security,* who may sue either at law or in equity to recover the consideration paid for the security, together with interest at eight per cent per year from the date of payment, costs and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owns the security. [Emphasis added.]

Based on the language regarding "untrue" statements, omissions of material facts, and the need to have the "statements made . . . not [be] misleading," the violation of the statute by Helicon and Witucki appears to meet the policy definition of a "wrongful act" regarding "misstatement(s) or

---

[2] See footnote 1.

misleading statement(s)." The price and value of the school building to be purchased was significantly over-inflated and disclosure was not made of conflicts of interest that existed regarding Witucki and Helicon's financial ties and involvement with the entity fronting the sale of the school property.

We disagree with the Funds' contention that the profit realized by Witucki and Helicon was not itself an illegal act. However, it does not matter because the policy exclusion merely requires a gain to which the insured "is not legally entitled." We agree with federal precedent[3] that this is a lesser standard of wrongfulness than "illegal." *Jarvis Christian College v Nat'l Union Fire Ins Co of Pittsburgh, PA*, 197 F3d 742, 749 (CA 5, 1999). "A defendant is not legally entitled to an advantage or profit resulting from his violation of law if he could be required to return such profit." *TIG Specialty Ins Co v Pinkmonkey.com, Inc*, 375 F3d 365, 370 (CA 5, 2004). The advantage or profit realized by Witucki and Helicon resulted, in part, from the violation of Conn Gen Stat § 36b-29(a)(2). The remedy for violation of this statutory provision is recovery of "the consideration paid for the security." *Id.* Because return of the consideration paid for the security is the remedy required, a legal entitlement to the funds paid for the bonds did not exist, which also logically leads to the conclusion that there is no legal entitlement to any personal advantage or profit realized by Helicon and Witucki from the monies paid for the bonds. We are not persuaded that their gain is "incidental," and we thus reject the Funds' reliance on *Alstrin v St Paul Mercury Ins Co*, 179 F Supp 2d 376 (D Del, 2002).

The Funds also asserted in the original appeal that interpretation of the personal profit exclusion, as precluding coverage in the circumstances of this case, results in illusory coverage. As discussed in *Ile v Foremost Ins Co*, 293 Mich App 309, 315-316; 809 NW2d 617 (2011), rev'd on other grounds *Ile ex rel Estate of Ile v Foremost Ins Co*, 493 Mich 915 (2012):

> An "illusory contract" is defined as "[a]n agreement in which one party gives as consideration a promise that is so insubstantial as to impose no obligation. The insubstantial promise renders the agreement unenforceable." A similar, more specific concept exists in the realm of insurance. The "doctrine of illusory coverage" encompasses "[a] rule requiring an insurance policy to be interpreted so that it is not merely a delusion to the insured. Courts avoid interpreting insurance policies in such a way that an insured's coverage is never triggered and the insurer bears no risk." [Citations omitted.]

"[T[he doctrine of illusory coverage is applicable 'where part of the [insurance] premium is specifically allocated to a particular type or period of coverage and that coverage turns out to be functionally nonexistent.'" *Id.* at 320-321 (citation omitted). The Funds' argument is without

---

[3] This Court is not bound by federal decisions, but may elect to use such decisions for guidance. *Van Buren Twp v Garter Belt, Inc*, 258 Mich App 594, 604; 673 NW2d 111 (2003).

merit because situations could occur, which do not trigger the exclusion; such as where an insured may be legally entitled to receive a profit or advantage or when a "personal" profit or advantage is not realized.

Affirmed.

/s/ Patrick M. Meter
/s/ Karen M. Fort Hood
/s/ Amy Ronayne Krause