*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AMEERAH MATTI,

        Plaintiff-Appellant,

v

HUSSAN TAHNUN and MOHAMMAD HUSSAIN,

        Defendants,

and

STATE FARM INSURANCE COMPANY,

        Defendant-Appellee.

UNPUBLISHED
February 22, 2024

Nos. 364473, 364975
Macomb Circuit Court
LC No. 2020-004602-NI

Before: PATEL, P.J., and K. F. KELLY and RIORDAN, JJ.

PER CURIAM.

In this consolidated[1] first-party no-fault insurance dispute, in Docket No. 364473, plaintiff appeals by right from the stipulated order of dismissal of defendants Hussan Tahnun and Mohammad Hussain. In Docket No. 364975, plaintiff also appeals by right from the trial court's order denying his request for attorney fees. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises out of an automobile accident on February 10, 2020, when the at-fault driver failed to yield a right-of-way, causing a collision between the vehicle he was driving and plaintiff's vehicle. At the time of the accident, State Farm insured plaintiff's vehicle under a policy effective August 27, 2019 to February 27, 2020. Addressing the personal injury protection ("PIP")

---

[1] *Matti v Tahnun*, unpublished order of the Court of Appeals, entered February 22, 2023 (Docket Nos. 364473 and 364955).

coverage, the policy stated: "We will pay, subject to the provisions of the No-Fault Act, for accidental bodily injury to an insured arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle," including allowable expense benefits, work loss benefits, loss of services benefits, and survivors' benefits. The policy defined the "No-Fault Act" as "Chapter 31 of the Michigan Insurance Code and any amendments." The policy also defined allowable expense PIP benefits: "Allowable expenses are all reasonable charges incurred for reasonably necessary products, services and accommodations for an insured's care, recovery or rehabilitation." At the request of State Farm, Dr. Adil Ali conducted an independent medical examination[2] ("IME") of plaintiff. Ali concluded plaintiff had "resolved soft tissue sprain/strain injuries," and "no further treatment is indicated for injuries sustained in the motor vehicle accident."

In plaintiff's complaint, plaintiff sought PIP benefits under the no-fault act, MCL 500.3101 *et seq*., and under her insurance policy with State Farm. Plaintiff claimed medical and hospital expenses, loss of income, replacement services, travel expenses, and attendant care. State Farm filed a motion in limine to preclude claims that it said exceeded the fee schedules located under MCL 500.3157. State Farm argued the plain language of MCL 500.3157 mandated the application of the fee schedule to plaintiff's medical expenses incurred after July 1, 2021, and this Court's opinion in *Andary v USAA Cas Ins Co*, 343 Mich App 1; 996 NW2d 784 (2022), aff'd in part in part, vacated in part, rev'd in part *Andary v USAA Cas Ins Co*, ___ Mich ___; ___ NW2d ___ (2023) (Docket No. 164772), did not prohibit the application of the fee schedule to plaintiff's expenses. Plaintiff responded, arguing the fee schedules did not apply under this Court's *Andary* opinion, because plaintiff's policy providing unlimited medical expense coverage was originally issued in 2015, well before the no-fault amendments went into effect.

After a hearing, the trial court granted State Farm's motion. Plaintiff moved for reconsideration, arguing State Farm's failure to raise the MCL 500.3157 fee schedule issue sooner prevented plaintiff from conducting discovery specific to the issue. Plaintiff contended questions remained regarding if the policy or premium changed in response to the statutory amendments, and if plaintiff was advised of any changes. Further, plaintiff argued if the policy language and premiums remained unchanged through the amendments, plaintiff had a reasonable expectation her coverage was unaltered. The trial court denied reconsideration. Meanwhile, a jury trial was held in October 2022, which returned a verdict in favor of plaintiff, finding she incurred allowable medical expenses of over $60,000. Comporting with the order granting State Farm's motion to preclude claims exceeding the fee schedule, the trial court awarded plaintiff the reduced amount of $21,429.15 for her medical expenses. The jury also found plaintiff incurred work loss of

_____

[2] This opinion uses the phrase "independent medical examination" because that is the phrase used by the parties and trial court. However, in *Micheli v Mich Auto Ins Placement Facility*, 340 Mich App 360, 364 n 3; 986 NW2d 451 (2022), this Court observed that this "appellation is a euphemistic term of art" and that, at least in the insurance context, "an IME involves obtaining a second opinion from a doctor who is entirely selected and paid for by an insurance company, rendering the 'independence' of the examination somewhat questionable."

$20,124. Finally, the jury found payment for all of plaintiff's expenses and losses was overdue, and the trial court awarded plaintiff interest.

After the jury reached a verdict but before judgment was entered, plaintiff moved for attorney fees under MCL 500.3148 claiming the denial of benefits was unreasonable. In response, State Farm argued its denial of benefits was on the basis of a bona fide factual uncertainty, and reasonable under caselaw. Ultimately, the trial court denied plaintiff's motion, finding State Farm's denial of work loss benefits before the IME reasonable. Plaintiff appealed and this Court consolidated the two appeals. *Matti v Tahnun*, unpublished order of the Court of Appeals, entered February 22, 2023 (Docket Nos. 364473 and 364955).

## II. STANDARDS OF REVIEW

A trial court's pretrial ruling on a motion in limine is reviewed for an abuse of discretion. *Law Offices of Jeffrey Sherbow, PC v Fieger & Fieger, PC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 360582), slip op at 9. "However, to the extent the decision involves the proper application of legal principles, that aspect of the decision is reviewed de novo." *Id*. An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes. *Augustine v Allstate Ins Co*, 292 Mich App 408, 419; 807 NW2d 77 (2011). We also review a ruling on a motion for reconsideration for an abuse discretion. *Corporan v Henton*, 282 Mich App 599, 605-606; 766 NW2d 903 (2009).

The question of the availability of insurance under a statute is a question of statutory interpretation, which is reviewed de novo. *Titan Ins Co v American Country Ins Co*, 312 Mich App 291, 296; 876 NW2d 853 (2015); *Makowski v Governor*, 317 Mich App 434, 441; 894 NW2d 753 (2016). "The role of [the] Court in interpreting statutory language is to ascertain the legislative intent that may reasonably be inferred from the words of the statute." *Mich Ass'n of Home Builders v City of Troy*, 504 Mich 204, 212; 934 NW2d 713 (2019) (quotation marks and citations omitted). "Statutory provisions must be read in the context of the entire act, giving every word its plain and ordinary meaning." *Driver v Naini*, 490 Mich 239, 247; 802 NW2d 311 (2011). "If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning, and we enforce the statute as written." *Rouch World, LLC v Dep't of Civil Rights*, 510 Mich 398, 410; 987 NW2d 501 (2022).

The proper interpretation of a contract is also reviewed de novo. *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 353; 596 NW2d 190 (1999). Insurance contracts are construed in accordance with the principles of contract construction. *Titan Ins Co v Hyten*, 491 Mich 547, 554; 817 NW2d 562 (2012). The primary goal in the interpretation of a contract is to honor the intent of the parties. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 473; 663 NW2d 447 (2003).

A request for attorney fees under MCL 500.3148(1) presents a mixed question of law and fact. *Ross v Auto Club Group*, 481 Mich 1, 7; 748 NW2d 552 (2008). The findings of fact underlying an award of attorney fees are reviewed for clear error, *Brown v Home-Owners Ins Co*, 298 Mich App 678, 690; 828 NW2d 400 (2012), while underlying questions of law are reviewed de novo, *Loutts v Loutts*, 298 Mich App 21, 24; 826 NW2d 152 (2012). A finding is clearly erroneous when, although there is evidence to support it, the appellate court on review of the entire

record, is left with a definite and firm conviction a mistake was made. *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 296; 769 NW2d 234 (2009).

### III.  APPLICATION OF FEE SCHEDULE–STATUTORY ARGUMENT

The trial court did not err when it applied the fee schedule to treatment received for plaintiff's injury because, in contrast with other Insurance Code sections amended in 2019, the amendments to MCL 500.3157 present no indication of Legislative intent for these reimbursement maximums to apply to policies issued after any date other than June 11, 2019.

The 2019 no-fault and other Insurance Code amendments, 2019 PA 21, took effect on June 11, 2019.  As part of these amendments, MCL 500.3157 was amended to add subsections (2) through (15), which state, in pertinent part:

> (1) Subject to subsections (2) to (14), a physician, hospital, clinic, or other person that lawfully renders treatment to an injured person for an accidental bodily injury covered by personal protection insurance, or a person that provides rehabilitative occupational training following the injury, may charge a reasonable amount for the treatment or training.  The charge must not exceed the amount the person customarily charges for like treatment or training in cases that do not involve insurance.
>
> (2) Subject to subsections (3) to (14), a physician, hospital, clinic, or other person that renders treatment or rehabilitative occupational training to an injured person for an accidental bodily injury covered by personal protection insurance is not eligible for payment or reimbursement under this chapter for more than the following:
>
>> (a) For treatment or training rendered after July 1, 2021 and before July 2, 2022, 200% of the amount payable to the person for the treatment or training under Medicare.
>>
>> (b) For treatment or training rendered after July 1, 2022 and before July 2, 2023, 195% of the amount payable to the person for the treatment or training under Medicare.
>>
>> (c) For treatment or training rendered after July 1, 2023, 190% of the amount payable to the person for the treatment or training under Medicare.
>
> * * *
>
> (6) Subject to subsections (7) to (14), a hospital that is a level I or level II trauma center that renders treatment to an injured person for an accidental bodily injury covered by personal protection insurance, if the treatment is for an emergency medical condition and rendered before the patient is stabilized and transferred, is not eligible for payment or reimbursement under this chapter of more than the following:

-4-

(a) For treatment rendered after July 1, 2021 and before July 2, 2022, 240% of the amount payable to the hospital for the treatment under Medicare.

(b) For treatment rendered after July 1, 2022 and before July 2, 2023, 235% of the amount payable to the hospital for the treatment under Medicare.

(c) For treatment rendered after July 1, 2023, 230% of the amount payable to the hospital for the treatment under Medicare.

\* \* \*

(8) For any change to an amount payable under Medicare as provided in subsection (2), (3), (5), or (6) that occurs after the effective date of the amendatory act that added this subsection, the change must be applied to the amount allowed for payment or reimbursement under that subsection. However, an amount allowed for payment or reimbursement under subsection (2), (3), (5), or (6) must not exceed the average amount charged by the physician, hospital, clinic, or other person for the treatment or training on January 1, 2019.

\* \* \*

(14) Subsections (2) to (13) apply to treatment or rehabilitative occupational training rendered after July 1, 2021. [MCL 500.3157(1), (2), (6), (8), and (14).]

Effective June 11, 2019, MCL 500.3107c and MCL 500.3107d were added to provide requirements for the selection among personal protection insurance coverage limit options, or the declination of such coverage, for policies issued and renewed after July 1, 2020. MCL 500.3109a(2) also utilizes a July 1, 2020 deadline stating that for policies "issued or renewed after July 1, 2020, the insurer shall offer to an applicant or named insured that selects a personal protection benefit limit under [MCL 500.]3107c(1)(b) an exclusion related to qualified health coverage. . . ."

The public act also amended other chapters of the Insurance Code, including Chapter 21. 2019 PA 21. Among these revisions were MCL 500.2105 and MCL 500.2111f. MCL 500.2111f, which was added to the code, states, in pertinent part:

(1) Before July 1, 2020, an insurer that offers automobile insurance in this state shall file premium rates for personal protection insurance coverage for automobile insurance policies effective after July 1, 2020.

\* \* \*

(8) An insurer shall pass on, in filings to which this section applies, savings realized from the application of [MCL 500.]3157(2) to (12) to treatment, products, services, accommodations, or training rendered to individuals who suffered accidental bodily injury from motor vehicle accidents that occurred before July 2, 2021. . . . After July 1, 2022, the director shall review all rate filings to which this section applies for compliance with this subsection. [MCL 500.2111f(1) and (8).]

Plaintiff suggests because MCL 500.2105(6) and MCL 500.3157 were both part of 2019 PA 21, the effective date of July 1, 2020, found in MCL 500.2105(6) applies to MCL 500.3157. However, MCL 500.2105(6) specifically refers to "this chapter," referring to Chapter 21 of the Insurance Code, not Chapter 31, which contains MCL 500.3157. We rejected a similar argument in *Andary*, concluding MCL 500.2111f(8) did not support retroactive application of MCL 500.3157 because "it is located in a separate chapter of the insurance code." *Andary*, 343 Mich App at 23-24.

In *Andary*, the plaintiffs' injuries occurred years before the 2019 no-fault amendments. *Andary*, 343 Mich App at 8. As noted in the Michigan Supreme Court's subsequent opinion, one of the plaintiffs' policies specifically stated "[t]here is no maximum dollar amount for reasonable and necessary medical expenses incurred for a covered person's care, recovery, or rehabilitation." *Andary*, ___ Mich at ___; slip op at 8-9. Considering these facts, this Court reasoned:

> Retroactive application [of the no-fault amendments] would yield a windfall for insurers with no corresponding benefit to their insureds. The premiums and reserves for pre-amendment PIP policies were set by insurers based upon the risk that the persons covered might need lifetime care for catastrophic injuries. Put simply, the insurers have already collected premiums in an amount sufficient to provide unlimited benefits and to release them from that responsibility would substantially diminish their well-settled obligations under the pre-amendment no-fault scheme.
>
> * * *
>
> The goal of lowering insurance rates is contingent on the lowering of benefits, but because the lowering of premiums is only prospective, it would severely limit the benefits promised in the policies when higher premium rates, reflective of the greater benefits, were charged and paid for. And since the insurers have already been paid for the benefits promised under those policies, retroactive application would permit insurers to retain all the premiums paid prior to the 2019 amendments while allowing them to provide only a fraction of the benefits set out in those policies. Giving a windfall to insurance companies who received premiums for unlimited benefits is not a legitimate public purpose, nor a reasonable means to reform the system. [*Andary*, 343 Mich App at 18-19, 27-28.]

While plaintiff's appeal was pending, the Michigan Supreme Court issued its opinion in *Andary*. The Supreme Court affirmed this Court's holding that the MCL 500.3157 fee schedule does not apply to treatment of injuries incurred before June 11, 2019. *Andary*, ___ Mich at ___; slip op at 41. The Supreme Court also confirmed statutory law in effect at the time parties enter into a contract was incorporated into the contract. *Id.* at ___; slip op at 26-27. Further, the Court found "the law is well settled that the law in place at the time the parties' rights and obligations vested under a contract control," *Id.* at ___; slip op at 29, and "the scope of available PIP benefits under an insurance policy vests at the time of injury." *Id.* at ___; slip op at 24.

*Progressive Marathon Ins Co v Pena*, ___ Mich App ___; ___ NW3d ___ (2023) (Docket No. 358849) is instructive. In *Progressive Marathon*, the insurance policy was issued before

July 1, 2020, but the accident occurred after that date. *Id.* at ___; slip op at 1. The parties' dispute concerned the application of the mandated increases in minimum liability coverage under MCL 500.3009, not the fee schedule of MCL 500.3157. *Progressive Marathon*, ___ Mich App at ___; slip op at 1. We agreed with the insurer that the policy limits in effect at the time the policy was issued applied, even though the accident occurred after July 1, 2020. *Progressive Marathon*, ___ Mich App at ___; slip op at 4-5.

Though plaintiff cites *Progressive Marathon* to support her proposition the no-fault amendments did not automatically alter policies issued before July 1, 2020, plaintiff fails to recognize the important distinction between MCL 500.3009 and MCL 500.3157. MCL 500.3009, unlike MCL 500.3157, expressly distinguishes policies "delivered or issued for delivery . . . [b]efore July 2, 2020," and those "delivered or issued for delivery . . . after July 1, 2020," mandating a different minimum liability coverage amount to the two categories. MCL 500.3009(1)(a) and (1)(b); *Progressive Marathon Ins Co*, ___ Mich App at ___; slip op at 3-4. Interpreting MCL 500.3009, this Court stated:

> The fact that the statute distinguishes the liability limitations by the policy's delivery date indicates that coverage options were intended to be allocated differently.
>
> *   *   *
>
> Applying the plain language of the statue, it is clear that the Legislature did not intend for the increased minimums to apply automatically to policies that had been delivered prior to July 2, 2020. [*Id.* at ___; slip op at 4.]

In contrast, MCL 500.3157 does not distinguish the fee schedule's applicability "by the policy's delivery date," MCL 500.3009, and only distinguishes between categories of "treatment or training rendered" by date. MCL 500.3157. Just because MCL 500.3009 differentiates between policies renewed, delivered, issued, or effective before and after July 1, 2020, does not mean all amendments in effect under 2019 PA 21 make this differentiation. Under the canon of statutory construction of *expressio unius est exclusio alterius*—the expression of one thing is the exclusion of others—the fact some sections identify this distinction lends to the interpretation it was not intended in sections such as MCL 500.3157, where it was not included. See *Johnson v Recca*, 492 Mich 169, 176 n 4; 821 NW2d 520 (2012). Additionally, the purpose of the July 1, 2020 deadline in the other sections is for changes in liability limits and premiums, and is not once applied to allowable reimbursement to providers—the subject of MCL 500.3157. To argue one change necessitates the simultaneous enactment of another, when the Legislature declined to explicitly specify such an enactment, runs counter to this canon.

Having disposed with all other arguments against the application of the fee schedule, we are left with the principle that statutory law in effect at the time parties enter into a contract is incorporated into the contract, *Andary*, ___ Mich at ___; slip op at 26-27, and "the scope of available PIP benefits under an insurance policy vests at the time of injury," *id.* at ___; slip op at 24. Because plaintiff's policy was issued and plaintiff was injured after the June 11, 2019 effective date of the 2019 PA 21 amendments, the fee schedule of the amended MCL 500.3157 is

part of the policy and applies to plaintiff's treatment after July 1, 2021, as specified in the section's text.

## IV.  APPLICATION OF FEE SCHEDULE–CONTRACTUAL ARGUMENT

Next, plaintiff argues that because State Farm failed to notify her that the MCL 500.3157 fee schedule would apply to her policy renewed in August 2019, the change cannot be given effect. We disagree.

In support of this argument, plaintiff cites the "renewal rule" of *Koski v Allstate Ins Co*, 213 Mich App 166, 170; 539 NW2d 561 (1995), rev'd on other grounds 456 Mich 439 (1998), which states that "[w]here a renewal policy is issued without calling the insured's attention to a reduction in coverage, the insurer is bound to the greater coverage in the earlier policy."  However, an insurer's duty to inform its insureds of coverage reductions the insurer enacts through changes in the terms of the policy does not imply an analogous duty concerning statutory changes enacted by the Legislature.

Because insurance contracts are subject to statutory regulation, *Farmers Ins Exch v Kurzmann*, 257 Mich App 412, 418; 668 NW2d 199 (2003), statutory provisions must be read into them.  *Hyten*, 491 Mich at 554.  Though our Supreme Court has specified the no-fault act sets the mandatory minimum coverage for PIP policies, *Rohlman*, 442 Mich at 524-525, suits for PIP benefits are contract actions, and "insurers may pursue traditional contract defenses that have not been abrogated by the no-fault act.  *Meemic Ins Co v Fortson*, 506 Mich 287, 300-303; 954 NW2d 115 (2020).  "It is clear, therefore, that a PIP policy confers enforceable contract rights upon those entitled to benefits."  *Andary*, 343 Mich App at 20.

Additionally, an insurance policy must be interpreted so it is not illusory by failing to provide coverage and imposing no risk on the insurer.  *Ile v Foremost Ins Co*, 293 Mich App 309, 315-316, 320-321; 809 NW2d 617 (2011), rev'd on other grounds 493 Mich 915 (2012).  An illusory contract will be enforced to give effect to the reasonable expectation of the insured.  *Id.* at 325.  However, an insured's perceived expectation may not override the clear language of an insurance policy.  *Ile v Foremost Ins Co*, 493 Mich 915, 915; 823 NW2d 426 (2012).

Plaintiff characterizes her argument for provider reimbursement exceeding the fee schedule as being in accordance with a policy that provided more than the minimum coverage mandated by the no-fault act.  To that end, plaintiff cites *Rohlman*, 442 Mich at 530 n 10, in which the Supreme Court stated:

> Although an insurer may not by its contract restrict its coverage to less than that required by statute, it may contract for a broader coverage than the statutory liability, as, for instance, with respect to territory, amount, circumstances of operation, etc., and in such case recovery is measured solely by the policy.  The fact that the coverage of the policy may be broader than that required by statute is immaterial, for the contract of the parties may be enforced as written.

As applied to this case, however, such a characterization is inaccurate because MCL 500.3157 does not set minimum coverage levels, but rather maximum payment amounts.  MCL 500.3157(2), (6), and (7) (stating a provider "is not eligible for payment or reimbursement under

this chapter for more than the following"). The section provides no option for insurers to contract with insureds for higher maximum provider allowances.

"The [no-fault] statute is manifestly superior to and controls the policy, and its provisions supersede any conflicting provisions of the policy." *Rohlman*, 442 Mich at 530 n 10; see also *Cruz v State Farm Mut Auto Ins Co*, 466 Mich 588, 598; 648 NW2d 591 (2002) (stating a policy provision "that contravenes the requirements of the no-fault act by imposing some greater obligation upon one or another of the parties is, to that extent, invalid"). Further, when reasonably possible, a contractual provision that might conflict with a statute will be construed consistently with the statute, *Auto-Owners Ins Co v Martin*, 284 Mich App 427, 434; 773 NW2d 29 (2009), and provisions that conflict with statutes are invalid, *Corwin v DaimlerChrysler Ins Co*, 296 Mich App 242, 261; 819 NW2d 68 (2012). This superiority of the provisions of the no-fault act dictates the "renewal rule" of notification of coverage reductions does not extend to reductions brought into effect by statute. Additionally, the language of the policy explicitly indicated the PIP medical fees it would pay were "subject to the provisions of the No-Fault Act," acknowledging amendments to the no-fault act could reduce, or increase, coverage on renewal, independent of any action of the insurer.

In sum, we conclude that the trial court did not abuse its discretion when it granted State Farm's motion in limine because neither the plain language of the amendment nor the contract between the parties offered plaintiff the relief she sought. Accordingly, we affirm the trial court's order granting State Farm's motion in limine.

V.  ATTORNEY FEES

Lastly, plaintiff argues the trial court abused its discretion when it denied plaintiff's motion for attorney fees because State Farm's denial of benefits was unreasonable. Because there were factual uncertainties regarding whether the accident injuries caused plaintiff's work loss and whether plaintiff was obligated to pay work loss benefits on plaintiff's coordinated policy, we disagree.

Generally, attorney fees are not recoverable unless expressly allowed, such as by statute or court rule. *Haliw v City of Sterling Heights*, 471 Mich 700, 707; 691 NW2d 753 (2005); *In re Waters Drain Drainage Dist*, 296 Mich App 214, 217; 818 NW2d 478 (2012). Exceptions to the rule against awarding attorney fees as damages are to be narrowly construed, and include recovery of fees incurred as the result of another's fraudulent or unlawful conduct. *Spectrum Health v Grahl*, 270 Mich App 248, 253; 715 NW2d 357 (2006).

MCL 500.3148(1) states, in pertinent part:

(1) Subject to subsections (4) and (5), an attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits that are overdue. The attorney's fee is a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment. An attorney advising or representing an injured person concerning a claim for payment of personal protection insurance benefits from an insurer shall

not claim, file, or serve a lien for payment of a fee or fees until both of the following apply:

> (a) A payment for the claim is authorized under this chapter.
>
> (b) A payment for the claim is overdue under this chapter. [MCL 500.3148(1).]

In *Moore v Secura Ins*, 482 Mich 507, 517; 759 NW2d 833 (2008), the Michigan Supreme Court elaborated on the entitlement to attorney fees under MCL 500.3148:

> MCL 500.3148(1) establishes two prerequisites for the award of attorney fees. First, the benefits must be overdue, meaning "not paid within 30 days after [the] insurer receives reasonable proof of the fact and of the amount of loss sustained." MCL 500.3142(2). Second, in postjudgment proceedings, the trial court must find that the insurer "unreasonably refused to pay the claim or unreasonably delayed in making proper payment." MCL 500.3148(1). Therefore, assigning the words in MCL 500.3142 and MCL 500.3148 their common and ordinary meaning, "attorney fees are payable only on overdue benefits for which the insurer has unreasonably refused to pay or unreasonably delayed in paying."

Here, the jury found the benefits awarded were overdue, satisfying the first *Moore* prerequisite. "If a claimant establishes the first prerequisite, a rebuttable presumption arises regarding the second." *Brown*, 298 Mich App at 690-691. The burden to justify the refusal or delay is the insurer's. *Ross*, 481 Mich at 11. In examining an insurer's reasonability, a court "must examine the circumstances as they existed at the time the insurer made the decision." *Brown*, 298 Mich App at 691. The court may not consider whether the jury later awarded the benefits. *Moore*, 482 Mich at 522. For example, a dispute regarding which insurer is obligated to pay PIP benefits does not excuse delaying payment, *Griffin v Trumbull Ins Co*, 509 Mich 484, 502; 983 NW2d 760 (2022), however, if "the insurer's refusal or delay in payment is the product of a legitimate question of statutory construction, constitutional law, or a bona fide factual uncertainty," then the insurer's decision is "not unreasonable." *Moore*, 482 Mich at 520. This Court has found an insurer's denial unreasonable where the insurer made inconsistent decisions, paying some expenses, but not others, related to the same injury. *McKelvie v Auto Club Ins Ass'n*, 203 Mich App 331, 337; 512 NW2d 74 (1994).

Plaintiff's June 8, 2021 IME concluded that her injuries were resolved, "no further treatment [was] indicated," and she "reached maximum medical improvement relative to injuries or conditions sustained in the 02/10/2020 accident." Because a reasonable insurer is not required to "go beyond" its physician's IME, *Moore*, 482 Mich at 523-524, 527, and because all of the medical expenses awarded were from after the IME, regarding the medical expenses alone, the trial court did not clearly err when finding that State Farm's denial was reasonable.

Plaintiff rests her claim for attorney fees on State Farm's alleged unreasonable refusal or delay of her work loss claim. Plaintiff claims she provided reasonable proof of her work loss, which began in March 2021, before the June 2021 IME. However, under *Moore*, 482 Mich at 517, this only established the overdue prerequisite which is not in dispute. The presumption of

-10-

unreasonable refusal or delay can be rebutted if "the insurer's refusal or delay in payment is the product of . . . a bona fide factual uncertainty." *Moore*, 482 Mich at 520.

In finding "Defendant's failure to pay work loss benefits prior to the IME [] reasonable," the trial court explained:

> Prior to that date, Defendant would have had to base its decision on nothing more than Plaintiff's word, without any independent evaluation being made. Moreover, Plaintiff's policy was coordinated and potentially secondary to Plaintiff's disability insurance. Plaintiff was advised that she needed to submit her claims to her disability insurance provider prior before [sic] Defendant would pay the benefits.

Because "whether the defendant's denial of benefits is reasonable under the particular facts of the case is a question of fact" *Moore*, 482 Mich at 516, we review the trial court's determination for clear error. Plaintiff presented no evidence she submitted claims to her disability insurance provider before the IME. Because a review of the record does not result in a definite and firm conviction of a mistake in the trial court's determination of reasonableness of the, at most, three month's denial of work loss, no clear error occurred and plaintiff is not entitled to attorney fees. *Marilyn Froling Revocable Living Trust*, 283 Mich App at 296.

Plaintiff also argues the trial court erred by not considering the implications of the settlement agreement concerning the claims against Tahnun and Hussain. Importantly, as evidence in support of its contention State Farm settled the claim against the at-fault driver, plaintiff only presented the settlement agreement. However, the text of the settlement agreement states the consideration was "paid by Auto Club Group Insurance Company on behalf of [Hussain] and [Tahnun]." Not only does plaintiff fail to produce any evidence State Farm was a party to the settlement, the settlement states: "[n]othing in this Release shall be construed as an admission of liability." Lastly, though an insurer's inconsistent decisions related to the same injury has been used by courts as a foundation for a finding of an unreasonable denial, *McKelvie*, 203 Mich App at 337, we "must examine the circumstances as they existed at the time the insurer made the decision," *Brown*, 298 Mich App at 691. Because an August 2022 settlement does not support the argument State Farm's June 2021 denial was inconsistent at the time it occurred, the trial court's finding of reasonableness was not clearly erroneous.

Affirmed. State Farm, as the prevailing party, may tax costs. MCR 7.219(A).

/s/ Sima G. Patel
/s/ Kirsten Frank Kelly
/s/ Michael J. Riordan