*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MACOMB COUNTY PROSECUTOR,

        Plaintiff,

v

MACOMB COUNTY EXECUTIVE and COUNTY
OF MACOMB,

        Defendants.

UNPUBLISHED
July 28, 2025
10:13 AM

No. 374004

Before: MALDONADO, P.J., and PATEL and YOUNG, JJ.

PER CURIAM.

In this original action under MCL 141.438(7) of the Uniform Budgeting and Accounting Act (the UBAA), MCL 141.421 *et seq.*, plaintiff Macomb County Prosecutor Peter Lucido filed a complaint seeking an order directing defendant Macomb County Executive Mark Hackel to disburse funds appropriated by the Board of Commissioners of defendant Macomb County. While this case was still pending, Lucido moved this Court to immediately enforce a portion of the complaint, and Hackel moved this Court to dismiss a portion of the complaint. We grant relief in part and deny it in part.

## I. BACKGROUND

The dispute before this Court involves two components of the FY 2025 Comprehensive General Appropriations Ordinance, Macomb Enrolled Ordinance No. 2024-05, which was enacted November 21, 2024. First, Lucido contends that the Board appropriated funds for a Chief Operations Clerk for the prosecutor's office and that Hackel improperly impounded these funds. Second, Lucido alleges that Hackel impounded funds appropriated for outside legal services for the prosecutor's office. In response to Lucido's claims, Hackel asserted that the appropriations at issue were conditional and that the conditions precedent to disbursement of the funds had not occurred, meaning that Hackel had no obligation to disburse the funds.

To provide context for this dispute, we begin with a summary of the budget procedures under the Macomb County Charter, which this Court has previously explained as follows:

In 2009, Macomb County voters adopted a home rule charter under the Charter Counties Act (CCA), MCL 45.501 *et seq*., and created the office of the county executive. Under the charter, the executive, who is the head of the executive branch of county government, oversees all county departments, except for departments headed by countywide elected officials. The executive is responsible for submitting a proposed annual budget and quarterly financial reports to the Commission [i.e., the Board]. The 13-member Commission, which holds the county's legislative power, has the authority to appropriate funds pursuant to section 4.4(c) of the charter. The charter requires that plaintiff [Lucido], as a countywide elected official, manage his office within authorized budget appropriations. The charter also provides that plaintiff is subject to the budgeting recommendations of the executive as approved by the Commission.

The charter mandates that the executive prepare and administer a balanced budget, which the executive transmits to the Commission before the beginning of the next fiscal year. The Commission adopts a balanced line item operating budget and a general appropriations ordinance. Transfers and impoundments of appropriations may be made only in accordance with the appropriations ordinance. The executive may veto a line item of an ordinance appropriating money, but the Commission can override that veto. If the executive does not veto within 10 business days, the action of the Commission takes effect. [*Macomb County Prosecutor v Macomb County Executive*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (footnotes omitted) (*Macomb II*); slip op at 1-2, (Mich, 2025).]

Before turning to the facts underlying the 2025 budget dispute, we note that the present case is the third budget dispute before this Court between Lucido and Hackel in recent years. Previously, related to the 2022 Budget, Lucido and Hackel quarreled over funding for positions in the prosecutor's office. In *Macomb County Prosecutor v Macomb County Executive*, 341 Mich App 289, 295; 989 NW2d 864 (2022) (*Macomb I*), among other issues, this Court determined that the Macomb County Charter authorized the Board to appropriate more funds for a line-item than the amounts contained in the executive's recommended budget. *Id*. at 308. Further, considering the Macomb County Charter and MCL 141.137, this Court concluded that the executive lacked the "blanket authorization" to "unilaterally" impound "appropriated funds at his or her discretion." *Macomb I*, 341 Mich App at 313-314. However, this Court recognized that Hackel, as the executive, possessed limited authority to impound appropriate funds, "limited to situations in which doing so would achieve economic efficiencies." *Id*. at 314. As applied in *Macomb I*, this Court concluded that Hackel exceeded his authority by impounding funds appropriated by the Board for positions in the prosecutor's office, and this Court granted Lucido declaratory relief and issued a writ of mandamus directing Hackel to disburse the funds or to "seek an amendment of the appropriations ordinance from the Board." *Id*. at 314-315, 318.

Related to the 2024 Budget, the parties later litigated the question whether the Board could appropriate funds for Lucido to use to hire independent legal counsel. In *Macomb II*, ___ Mich App at ___; slip op at 10-13, looking to statutory provisions and the Macomb County Charter, this Court held that the Board could appropriate funds for the prosecutor to use for outside legal services and that Hackel could not impound these appropriated funds without a showing of economic efficiencies. Elaborating, this Court concluded that, "although § 6.6.5 [of the Macomb

County Charter] indicates that an elected county official cannot expend funds on independent counsel, it has an exception if such an expenditure is permitted by law. The Commission appropriated the funds, then issued a resolution that specifically authorized their use for independent legal counsel, and defendants have not cited anything in the charter proscribing that authority or process." *Id*. at ___; slip op at 12. Having determined that the Board could appropriate funds for outside counsel for the prosecutor, this Court turned to the question whether Hackel could impound those funds, and this Court concluded that Hackel again exceeded his authority by impounding the funds without a showing of economic efficiencies. *Id*. at ___; slip op at 12-13. This Court issued a writ of mandamus, directing Hackel to disburse the $42,500 appropriation and indicating that the parties should "work together to facilitate legal contracts under the applicable county process." *Id*. at ___; slip op at 13.

In *Macomb II*, the Supreme Court ordered oral arguments on the application. Ultimately, the Supreme Court denied the application for leave to appeal. *Macomb County Prosecutor v Macomb County Executive*, 21 NW3d 458 (Mich, 2025).

## A. FACTS RELATED TO THE CHIEF OPERATIONS CLERK

Turning to the current dispute, for the 2025 Budget, Lucido sought funding for a Chief Operations Clerk. Lucido proposed upgrading an existing position—the Office Manager—to the Chief Operations Clerk, which would increase personnel expenses by approximately $17,000. Hackel's recommended budget did not include funding for a Chief Operations Clerk, but the Board conditionally approved funding for this position, subject to reclassification of the Office Manager position. In this regard, the 2025 Appropriations Ordinance states:

> WHEREAS, funds for personnel in the General Fund for the Office of the Prosecuting Attorney are appropriated for FY 2025 as follows in accordance with MCL 49.31 and MCL 49.34. Relative to the Office Manager positions listed below, *in the event that the position is reclassified* to the Chief Operations Clerk, the Salary & Wages, Benefits, and Total amounts are appropriated as follows: Salary & Wages ($82,780), Benefits ($32,220), and total ($115,000) [Emphasis added].

As shown in the budget, funds for the Office Manager position were appropriated in the amount of $97,800, including salary, wages, and benefits.

In addition to the 2025 Budget, on November 21, 2025, the Board also passed Resolution No. 2024-12526 with respect to the prosecutor's personnel. The resolution deemed the Office Manager position necessary. However, consistent with the 2025 Appropriations Ordinance, this resolution also contained language authorizing the Chief Operations Clerk "in the event that the Office Manager position listed below is reclassified to the Chief Operations Clerk . . . ."

The Office Manager position is held by an employee named Angela Burke. As Office Manager, Burke is a union member, covered by a Collective-Bargaining Agreement (CBA) between Macomb County and UAW Local 412. The CBA contains a master agreement applicable to all county employees as well as several appendices with more specific supplemental agreements for particular bargaining units. Burke, as Office Manager, is a member of Unit 75 and generally

-3-

subject to Appendix F of the CBA. Under Appendix F, a request for reclassification of a position must be submitted to the Human Resources and Labor Relations Department (HRLR) for approval.

In October 2024, Burke submitted a request to the HRLR for reclassification of her position from Office Manager to Chief Operations Clerk. On November 21, 2024, the HRLR denied Burke's request for reclassification, concluding that her job duties did not warrant the reclassification. On November 22, 2024, Lucido wrote to the Board with regard to Burke's position, asking the Board to remove the contingency language from the Appropriations Ordinance and Resolution No. 2024-12526 and to instead make the Chief Operations Clerk a "necessary and proper" position with appropriated funding for the prosecutor's office. In response to Lucido's letter, on December 2, 2024, the Board chair wrote to Lucido with regard to Burke's position, indicating that the Board supported the request for reclassification but reiterating that the appropriated funding was only available if reclassification occurred.

After the HRLR denied Burke's request for reclassification, on December 10, 2024, Lucido wrote to Karyln Semlow, the director of the HRLR. Citing MCL 49.31 and MCL 49.35, Lucido asserted that he could "insist" that the HRLR reclassify Burke because this employment decision was solely Lucido's decision to make. Additionally, on December 11, 2024, Lucido also sent Semlow a memo, asking her to post the Chief Operations Clerk position. In his memo, Lucido stated: "I reclassified the Office Manager position to Chief Operations Clerk per my prior correspondence to you." He asked Semlow to post the position internally as soon as possible. Undisputedly, the HRLR did not post the position.

## B. FACTS RELATED TO FUNDS FOR OUTSIDE LEGAL SERVICES

For the 2025 Budget, Hackel's recommended budget allocated funds for a "Court Contingency" in the amount of $42,500 under the General Fund portion of the budget. Consistent with Hackel's recommended budget, the Board appropriated $42,500 for legal services for the prosecutor, which appears in the 2025 Budget as an appropriation for a "Court Contingency" under a heading of "Appropriations–Other" in the General Fund portion of the Budget. It is undisputed that these funds were appropriated for the prosecutor's office to use for outside legal services. The parties debate, however, whether there was a contingency attached to the use of these funds. Specifically, Hackel contended that the phrase "court contingency" refers to the pending Supreme Court decision in *Macomb II* and that the funds are only available for Lucido's use if he prevails in the Supreme Court in *Macomb II*.

In an effort to use the funds for outside legal services, Lucido sought approval of contracts for outside legal services. At a meeting on January 23, 2025, the Board passed Resolution No. 2025-12875.[1] According to the resolution, Lucido needed legal services that included "but

_____

[1] Lucido filed the current lawsuit in this Court on January 8, 2025. Both parties and the Board's amicus filings provided this Court with additional information and proofs related to events after Lucido filed suit. We consider these events after the filing of Lucido's complaint because, "[w]hen deciding whether to issue a writ of mandamus, a court should consider the germane conditions existing at the time of hearing and determination rather than at the time of institution of the

-4-

are not limited to services to defend and represent the Prosecuting Attorney relating to claims and/or civil matters," and Macomb Corporate Counsel could not, or would not, provide these services. The Board thus approved contracts for legal services in the form of engagement letters with three outside firms. The resolution also states: "BE IT FURTHER RESOLVED, the total amount spent, between all firms added together and in all matters collectively, shall not exceed $42,500, which not-to-exceed amount is available in the General Fund Appropriations Court Contingency line item." In a second resolution (Resolution 2025-12876), the Board also approved appointment of additional outside counsel for the prosecutor's office.

On February 4, 2025, Hackel vetoed Resolution 2025-12875 for three reasons: (1) "[t]he absence of a legally accessible appropriation to support these contracts," (2) "[t]he need to defer to the judiciary's pending decision regarding the Prosecutor's authority to expend public funds," and (3) "[t]he Resolution's failure to uphold transparency and responsible oversight." Primarily, Hackel asserted that the $42,500 in question was not available for use for legal services for the prosecutor because the appropriation was a contingent appropriation and the contingency—the outcome of the Supreme Court decision in *Macomb II*—remained unmet. Hackel also vetoed Resolution 2025-12876.

On February 20, 2025, the Board adopted two resolutions—Resolution 2025-13040 and Resolution 2025-13041—to override Hackel's vetoes with respect to Resolution 2025-12875 and Resolution 2025-12876. However, Hackel still did not release the $42,500 appropriated in the 2025 Budget General Fund for "Court Contingency" to the prosecutor. After the Supreme Court denied Hackel's application for leave to appeal in *Macomb II*, Lucido moved this Court to immediately enforce his claim for mandamus regarding the disbursement of the impounded funds for outside legal services. In response, Hackel moved this Court to dismiss that claim as moot on the basis that he had "worked diligently" to disburse the funds following the Supreme Court's order in *Macomb II*.

II. ANALYSIS

In his complaint, Lucido alleges the wrongful impoundment of funds for a Chief Operations Clerk and for outside legal services. Lucido contends that Hackel violated this Court's previous decisions in *Macomb I* and *Macomb II*. He also maintains that Hackel violated the County's ordinances and charter as well as statutory provisions, including MCL 49.31 and MCL 49.35. Lucido requests mandamus relief, injunctive relief, and declaratory relief. Lucido also moves for summary disposition under MCR 2.116(C)(10). In response, Hackel initially argued that Lucido's claims lack merit because the appropriations at issue were contingent appropriations and the contingencies have not been met. Hackel asserts that he is entitled to summary disposition under MCR 2.116(I)(2). He also argues that this Court lacks jurisdiction. Finally, in his most recent motion to dismiss, Hackel argues that Lucido's claim regarding the funding for outside

---

proceeding[.]" *Holliday v Bd of State Canvassers*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 372267); slip op at 7 (quotation marks, citation, and italics omitted).

counsel is now moot because Hackel intends to disburse those funds in light of the Supreme Court's decision in *Macomb II*.

## A. LEGAL STANDARDS

Lucido moves for summary disposition under MCR 2.116(C)(10), which tests the factual sufficiency of a claim. *Macomb II*, ___ Mich App at ___; slip op at 4. Such a motion is properly granted when, viewing the evidence in a light most favorable to the nonmoving party, no genuine issue of material fact exists. *Id*. In comparison, MCR 2.116(I)(2) rule provides that summary disposition is proper if a court determines "that the opposing party, rather than the moving party, is entitled to judgment."

The decisions whether to issue a writ of mandamus or injunctive relief are discretionary decisions. *Id*. at ___; slip op at 3, 13. Regarding mandamus, as explained by this Court:

> To obtain the extraordinary remedy of a writ of mandamus, the plaintiff must show that (1) the plaintiff has a clear, legal right to performance of the specific duty sought, (2) the defendant has a clear legal duty to perform, (3) the act is ministerial, and (4) no other adequate legal or equitable remedy exists that might achieve the same result. [*Johnson v Bd of State Canvassers*, 341 Mich App 671, 685; 991 NW2d 840 (2022) (quotations marks and citation omitted).]

Injunctive relief is "an extraordinary remedy that issues only when justice requires, there is no adequate remedy at law, and there exists a real and imminent danger of irreparable injury." *Kernen v Homestead Dev Co*, 232 Mich App 503, 509; 591 NW2d 369 (1998) (quotation marks and citation omitted). Lastly, "[t]he purpose of a declaratory judgment is to enable the parties to obtain adjudication of rights before an actual injury occurs, to settle a matter before it ripens into a violation of the law or a breach of contract, or to avoid multiplicity of actions by affording a remedy for declaring in expedient action the rights and obligations of all litigants." *Rose v State Farm Mut Auto Ins Co*, 274 Mich App 291, 294; 732 NW2d 160 (2006).

## B. JURISDICTION UNDER MCL 141.438

Before turning to the merits of the dispute, we begin by addressing Hackel's jurisdictional challenge. Whether this Court has subject-matter jurisdiction is an issue of law. *Macomb II*, ___ Mich App at ___; slip op at 3. As previously recognized by this Court, under the UBAA, this Court "indisputably has jurisdiction over cases involving the enforcement of a county official's funding under a county's budget." *Id*. at ___; slip op at 5. That is, under MCL 141.438(6), an elected county official who heads[2] a branch of government may "bring suit against the chief administrative officer of that county concerning an action relating to the enforcement of a general appropriations act for that branch of county government." By statute, such an action "shall only be brought in the Michigan court of appeals," MCL 141.438(7), and this Court's jurisdiction over

---

[2] In *Macomb I*, this Court concluded that Lucido, as the county prosecutor, was an elected official who heads a branch of county government within the meaning of MCL 141.438(6). See *Macomb I*, 341 Mich App at 303.

such matters is "exclusive," MCL 141.438(10). As a general proposition, this Court plainly has jurisdiction over an action to enforce the Macomb 2025 Appropriations Ordinance.

Hackel, however, emphasizes that this Court's jurisdiction is limited under MCL 141.438(9), which states: "The court's jurisdiction over and review of the issues raised in a suit brought under subsection (7)(b) or (8)(b) is limited to that portion of the general appropriations act that is directly affected by the amendment or action." Hackel asserts that the appropriations at issue in this case are contingent and until the contingencies are met, this Court lacks jurisdiction over Lucido's claims. Additionally, as it relates to the Chief Operations Clerk, Hackel contends that Lucido effectively seeks judicial review of whether the Office Manager position should be reclassified to Chief Operations Clerk. Hackel maintains that the reclassification decision is not subject to judicial review and that review of this issue is outside the narrow scope of this Court's jurisdiction under the UBAA. Contrary to Hackel's arguments, this Court has jurisdiction under the UBAA. However, we agree that this Court's jurisdiction is limited.

To begin with, Hackel's arguments regarding the contingent nature of the appropriations, and whether those contingencies have yet occurred, conflate the merits of Lucido's claims with this Court's subject-matter jurisdiction. As explained by this Court:

> Jurisdiction of the subject matter is the right of the court to exercise judicial power over a class of cases, not the particular case before it; to exercise the abstract power to try a case of the kind or character of the one pending. The question of jurisdiction does not depend on the truth or falsity of the charge, but upon its nature: it is determinable on the commencement, not at the conclusion, of the inquiry. Jurisdiction always depends on the allegations and never upon the facts. When a party appears before a judicial tribunal and alleges that it has been denied a certain right, and the law has given the tribunal the power to enforce that right, if the adversary has been notified, the tribunal must proceed to determine the truth or falsity of the allegations. The truth of the allegations does not constitute jurisdiction. [*Altman v Nelson*, 197 Mich App 467, 472; 495 NW2d 826 (1992) (citations omitted).]

As applied in this case, in determining whether this Court has jurisdiction, the question is not whether Lucido's claims have merit or whether Lucido can prove that Hackel impounded funds appropriated for the prosecutor's office. The issue is whether Lucido's claims, regardless of their truth or falsity, fall within the class of cases within this Court's jurisdiction under the UBAA. See *id*. Lucido seeks enforcement of the 2025 Appropriations Ordinance, which included an appropriation for a Chief Operations Clerk dependent on the reclassification of the Office Manager position to Chief Operations Clerk. Lucido maintains that the reclassification occurred and that the appropriation for the Chief Operations Clerk is thus enforceable. Lucido also alleges that funds were appropriated by the Board for the prosecutor to obtain independent legal counsel and that Hackel improperly impounded these funds. These claims are properly before this Court under the UBAA because—regardless of the merits of Lucido's allegations—the claims involve actions relating to the enforcement of a general appropriations act.

With that said, insofar as the parties debate whether the Office Manager position should be reclassified, what rules govern reclassification, or what judicial review is available regarding

reclassification, these issues are outside the scope of this Court's jurisdiction under the UBAA.  In this regard, *Macomb II* is helpful to understanding the scope of this Court's jurisdiction under the UBAA.  In *Macomb II*, the budget dispute over "contract services" for independent counsel involved intra-county contracting and contract execution authority, and the defendants argued that this Court lacked jurisdiction over these contracting issues.  See *Macomb II*, ___ Mich App at ___; slip op at 5.  Addressing this argument, this Court reasoned:

> Here, "contract services" was a line item in the budget.  Plaintiff seeks the enforcement of that line item in the general appropriations act.  That claim is properly before us.  We are unpersuaded by the Commission's argument that its January 25, 2024 action, Resolution 2024-11938, was not an appropriations action subject to enforcement.  As the Commission itself noted, that resolution was dependent on funds in the general appropriations ordinance that plaintiff now seeks to enforce.  Accordingly, this Court has jurisdiction of the instant dispute to the extent that it involves enforcement of the appropriation in the general appropriations ordinance.
>
> Defendants argue, however, that MCL 141.438(9) gives this Court jurisdiction only insofar as plaintiff's claims fall within the UBAA and, where the claims involve the power to initiate contracts, those claims should be dismissed.  But plaintiff is simply seeking the appropriation granted by the Commission; he is not asking for a determination about contract authority.  It is undisputed that the Commission authorized funds for independent legal counsel, and plaintiff seeks to use those funds.  The fact that a contract is the item being funded does not distinguish this case from a budget dispute over a noncontract item.  Plaintiff's claims are related to specific funding for his office under the County's budget.
>
> To the extent that the parties dispute the applicable procedure to implement a contract under the county's practices, and whether the Commission has the authority to initiate contracts, those points are outside this Court's narrow jurisdiction in the instant original action.  Once this matter concludes, the parties are free to file a separate action regarding the county contractual procedures.  Stated differently, should a conflict arise over contract procedures concerning the appropriation, that conflict must be resolved in a suit separate from the enforcement of the general appropriations matter before this Court.  [*Id*. at ___; slip op at 5-6.]

Analogously, in this case, the reclassification question is only before this Court insofar as reclassification was a condition of the appropriation for a Chief Operations Clerk; we must therefore consider whether the reclassification condition was met to determine whether the appropriated funds should be disbursed.  To the extent that the parties debate whether the position should be reclassified, what rules govern reclassification, or what judicial review is available regarding reclassification, these issues are outside the scope of this Court's narrow jurisdiction under the UBAA.  The fact remains, however, that this Court has jurisdiction under the UBAA, and Hackel's argument to the contrary lacks merit.

### C.  EFFECT OF *MACOMB I* AND *MACOMB II*

Next, we consider Lucido's arguments regarding the effect of *Macomb I* and *Macomb II*. Lucido argues that *Macomb II* is binding on this Court under MCR 7.215(C)(2) and the principles of stare decisis apply with regard to whether Hackel improperly impounded funds for outside legal services; that the declaratory relief granted in *Macomb I* continues to bind the parties with regard to Lucido's "exclusive discretion" to expend funds appropriated by the Board for personnel; and that collateral estoppel applies such that the decisions in *Macomb I* and *Macomb II* are binding. Contrary to Lucido's arguments, neither *Macomb I* nor *Macomb II* are dispositive of the present case.

To begin, collateral estoppel does not apply. "Generally, for collateral estoppel to apply three elements must be satisfied: (1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full [and fair] opportunity to litigate the issue; and (3) there must be mutuality of estoppel." *Monat v State Farm Ins Co*, 469 Mich 679, 682-684; 677 NW2d 843 (2004) (quotation marks and citation omitted) (alteration in *Monat*). For collateral estoppel to apply, "[t]he issues must be identical, and not merely similar . . . ." *Bd of County Rd Commissioners for County of Eaton v Schultz*, 205 Mich App 371, 376; 521 NW2d 847 (1994).

In the present case, questions remain as to whether the funds have actually been appropriated for the prosecutor's office given purported conditions on the appropriations and whether those conditions have been met. Neither *Macomb I* nor *Macomb II* addressed these issues, and collateral estoppel is, therefore, inapplicable. See *Monat*, 469 Mich at 682-684.

Likewise, Lucido's assertion that the declaratory relief ordered in *Macomb I* controls the outcome of this case similarly lacks merit. "[D]eclaratory actions are civil in nature and result in a binding adjudication of the rights and status of litigants [that] is conclusive in a subsequent action between the parties as to the matters declared." *Face Trading Inc v Dep't of Consumer & Indus Servs*, 270 Mich App 653, 663; 717 NW2d 377 (2006) (quotation marks, citation, and ellipses omitted) (second alteration in original). In *Macomb I*, 341 Mich App at 318, this Court granted Lucido's request for a declaratory judgment and declared "that the Board may adopt an independent budget and that Hackel exceeded his authority by impounding the $299,300 of appropriated funds at issue." The matters declared in *Macomb I* remain conclusive between the parties, but the matters declared in *Macomb I* differ from the issues now in dispute, which involve questions related to whether the 2025 appropriations are contingent and whether the contingencies have been met.

Lucido's reliance on stare decisis and MCR 7.215(C)(2) also lacks merit. The court rule states: "A published opinion of the Court of Appeals has precedential effect under the rule of stare decisis." "[U]nder the doctrine of stare decisis, principles of law deliberately examined and decided by a court of competent jurisdiction should not be lightly departed." *Coldwater v Consumers Energy Co*, 500 Mich 158, 172; 895 NW2d 154 (2017) (quotation marks and citation omitted). To be sure, *Macomb I* and *Macomb II*, as published decisions of this Court issued on or after November 1, 1990, must generally be followed by this Court. See MCR 7.215(C)(2) and

(J)(1). However, the fact remains that the legal principles resolved in *Macomb I* and *Macomb II* are not dispositive in this case given the different factual circumstances and the different issues presented—namely, the questions whether the appropriations were contingent and whether those contingencies have occurred. See *Twp of Yankee Springs v Fox*, 264 Mich App 604, 614 n 1; 692 NW2d 728 (2004) ("[N]otwithstanding the doctrine of *stare decisis*, a rule of law from a case that is factually distinguishable may not be binding on a different set of facts . . . ."); *Topps-Toeller, Inc v Lansing*, 47 Mich App 720, 729; 209 NW2d 843 (1973) (recognizing that stare decisis is "inapplicable when confronted with essentially different facts") (quotation marks and citation omitted). In short, while binding precedent and helpful to a resolution of this matter, this Court's decisions in *Macomb I* and *Macomb II* are not dispositive of the current case.

## D. CHIEF OPERATIONS CLERK

Turning to the merits of the parties' dispute, the first budget item at issue involves funds for a Chief Operations Clerk. The parties agree that the Board made the appropriation conditional on the reclassification of the Office Manager position to the Chief Operations Clerk.[3] The parties dispute whether the condition triggering the appropriation occurred; that is, they debate whether the Office Manager position was reclassified to a Chief Operations Clerk. The evidence shows that reclassification did not occur. As such, Lucido is not entitled to the disputed funds.

Undisputedly, Burke submitted a request to the HRLR for reclassification review of her position under Appendix F of the CBA, and the HRLR denied the request for reclassification. Although the HRLR declined the request for reclassification, Lucido nonetheless maintains that the position was reclassified because *he* reclassified the position in his correspondence with the HRLR. Lucido asserts that his decision to "reclassify" the position was an exercise of his authority under MCL 49.31 and MCL 49.35. Lucido's argument lacks merit.

MCL 49.31 and MCL 49.35 are part of the prosecutor's appointment/tenure statutes, MCL 49.31 *et seq*., which were enacted in 1925. These provisions state:

> In each county of the state of Michigan, the board of supervisors of such counties, at their regular annual meeting, may, by resolution authorize the appointment by the prosecuting attorney of said county of as many assistant prosecuting attorneys as said board of supervisors shall deem necessary, and shall in addition authorize the appointment by said prosecuting attorney, of such investigating officers, clerks, stenographers and other clerical employe[e]s as said board of supervisors shall deem necessary. [MCL 49.31.]

\* \* \*

---

[3] The parties do not dispute that the Board possessed the authority to make an appropriation conditional.

Said assistant prosecuting attorneys and other employees appointed by said prosecuting attorney under this act shall hold office during the pleasure of the prosecuting attorney. [MCL 49.35.]

As written, relevant to the Office Manager position and the proposed Chief Operations Clerk position, MCL 49.31 vests in the Board "the power to authorize county prosecutors to appoint certain staff positions within the prosecutor's office," *Bauer v Saginaw County*, 332 Mich App 174, 188; 955 NW2d 553 (2020), and under MCL 49.35, these employees serve at the prosecutor's pleasure.[4] Significant to the issues in this case is the statutory divide of authority between the prosecutor and the Board. Under MCL 49.31, the Board is charged with determining the necessity of a position for the prosecutor's office and fixing the compensation for that position. See *Rupert v Van Buren County*, 296 Mich 240, 243; 295 NW 630 (1941). Once the Board determines that the position is necessary, it falls to the prosecutor to select the particular person who shall hold that position. *Id*.

As applied in this case, the power to determine whether the Chief Operations Clerk was a necessary position for the prosecutor's office rested with the Board, and only if the Board exercised that authority could Lucido select the individual to hold that position. See *id*.; MCL 49.31. Nowhere in the statute is a prosecutor given the authority to unilaterally "reclassify" an existing position, and Lucido's attempts to do so were ineffective to establish a Chief Operations Clerk position in the prosecutor's office under MCL 49.31.[5]

Rather than establish the Chief Operations Clerk as a necessary position and afford Lucido the authority to select the individual to hold that position, the Board instead chose to make the appropriation subject to the position being "reclassified," and the Board's resolution addressing the prosecutor's personnel under MCL 49.31, likewise contained language authorizing the Chief Operations Clerk "in the event that the Office Manager position listed below is reclassified to the Chief Operations Clerk . . . ." Given the Board's decision *not* to exercise its authority under MCL 49.31 to make the Chief Operations Clerk a necessary position, it is clear that the references to reclassification in the budget appropriation are a reference to the reclassification procedures under

---

[4] No one disputes that the positions are clerical positions, subject to MCL 49.31 and MCL 49.35, and this conclusion comports with *Bauer*, 332 Mich App at 188, in which this Court determined that an office manager constituted a clerical employee subject to these statutory provisions.

[5] Because the Board did not actually authorize the Chief Operations Clerk position, there is also a question in this case, for purposes of mandamus, whether Hackel's role regarding the funds was ministerial in light of the dispute whether plaintiff could reclassify the position. As a comparison, in *Rupert v Wade*, 290 Mich 180, 184; 287 NW 425 (1939), the Court considered an action for mandamus to compel a county clerk to pay a stenographer for the prosecutor's office. Concluding that the duty involved was not ministerial and that the circuit court correctly denied mandamus, the Court stated: "In view of the fact that the board of supervisors failed to authorize the appointment of a stenographer for the office of the prosecuting attorney, the county clerk was required to construe section 1297, supra, to determine whether the prosecuting attorney had the right to appoint a stenographer. Such action would involve judgment. It was not a mere ministerial duty." *Id*.

-11-

the CBA, which required approval of the HRLR. The HRLR denied the request for reclassification. Accordingly, contrary to his claims that the Office Manager position was reclassified to Chief Operations Clerk, Lucido has not shown that the condition for appropriation occurred or that Hackel improperly impounded funds appropriated for the prosecutor's office.

In our judgment, the issue whether the reclassification procedures in the CBA are invalid in light of MCL 49.31 and MCL 49.35 raises questions outside the scope of this Court's narrow jurisdiction under the UBAA. As discussed previously, this Court's jurisdiction under MCL 141.438(6) is limited to cases involving "involving the enforcement of a county official's funding under a county's budget." *Macomb II*, ___ Mich App at ___; slip op at 5. Here, the budgetary provision to be enforced is the conditional appropriation for the Chief Operations Clerk, which was made dependent on reclassification approval by the HRLR under the CBA. In contending that he alone possesses the authority to make employment decisions for his office, Lucido does not seek to *enforce* the contested budgetary provision. Instead, Lucido effectively seeks to invalidate this Budget provision and to have this Court rewrite the appropriation to remove the reclassification condition imposed by the Board in favor of allowing Lucido to unilaterally create a Chief Operations Clerk position. A budgetary enforcement action under the UBAA is not the proper vehicle for Lucido's claim that a reclassification decision by the HRLR pursuant to the CBA is invalid.

## E. OUTSIDE LEGAL SERVICES

Lucido also contends that Hackel improperly impounded funds appropriated for the prosecutor's use for outside counsel. In response, Hackel initially argued that the appropriation for outside legal services in the 2025 Budget was made conditional on the outcome of the Supreme Court's decision in *Macomb II*. While *Macomb II* was pending, Hackel asserted that he had no obligation to disburse the funds for 2025.

The 2025 Budget does not support Hackel's position. Contrary to Hackel's subjective beliefs, nothing in the 2025 Budget supports his view that such a condition exists. The 2025 Budget simply uses the phrase "Court Contingency." It makes no mention of *Macomb II* or a Supreme Court decision in that matter. That the funds were identified as "Court Contingency" funds appears to mean nothing more than that they may or may not be needed for legal expenses, but the fact remains that these funds were earmarked for legal expenses without any mention of *Macomb II*. We decline to add conditions to the use of these funds that do not appear in the 2025 Appropriations Ordinance. Consequently, as in *Macomb II*, Hackel cannot impound these funds "absent a showing of economic efficiencies." *Macomb II*, ___ Mich App at ___; slip op at 12. Hackel has made no such showing, and his claim that he can impound the funds pending a decision by the Supreme Court in *Macomb II* lacks merit. Lucido is entitled to relief as it relates to this claim.

We also reject Hackel's argument in his motion for partial dismissal that *Macomb II* has rendered this issue moot.

An issue is moot when a judgment, "for any reason, cannot have any practical legal effect upon a then existing controversy." *League of Women Voters*, 506 Mich 561, 580, 957 NW2d 731

(quotation marks and citation omitted). In *T & V Assoc, Inc v Dir of Health & Human Servs*, ___ Mich ___, ___; 12 NW3d 594, 595 (2024), our Supreme Court explained as follows:

> A moot case seeks to get a judgment on a pretended controversy, when in reality there is none, or a judgment upon some matter which, when rendered, for any reason, cannot have any practical legal effect upon a then existing controversy. In other words, a case is moot when it involves nothing but abstract questions of law which do not rest upon existing facts or rights. [Quotation marks, citations, and ellipses omitted.]

Hackel asserts that since the Supreme Court's ruling in *Macomb II*, he has "taken all necessary and appropriate steps to disburse the appropriation" for outside legal counsel. According to Hackel, then, there is no adversity between the parties, and the issue is moot. We disagree.

As discussed, Hackel's original argument that the appropriation for outside legal services in the 2025 Budget was made conditional on the outcome of the Supreme Court's decision in *Macomb II* lacks merit, so his determination to stand by that argument does not quell the controversy in this case. Moreover, in Lucido's answer to Hackel's motion for partial dismissal, Lucido argues that Hackel still has not taken the steps necessary to disburse the funds for outside counsel. Therefore, there is still an existing controversy between the parties.

Before turning to the appropriate remedy in this case, we note that the Board moved this Court to file a brief amicus curiae.[6] In opposition to this motion, Hackel raised a new argument regarding the funds for outside counsel, asserting that the funds for Lucido cannot be used unless they are transferred from the Court Contingency to the prosecutor's contract services budget via an amendment to the 2025 Budget. Hackel cites the Michigan Department of Treasury, *Uniform Budget Manual for Local Units of Government*,[7] to support his claim that the funds are not

---

[6] We granted the Board's motion to appear as amicus curiae. *Macomb County Prosecutor v Macomb County Executive*, unpublished order of the Court of Appeals, entered March 7, 2025 (Docket No. 374004).

[7] The most recent version was finalized in April 2024, and it is effective for fiscal years beginning July 1, 2024, and after. Citing MCL 141.421(1) and MCL 141.436(4), Hackel asserts that the County was "required" to follow these "generally accepted accounting principles." These statutes do not mention the Budget Manual. Rather, they refer to "uniform charts of accounts" to be prescribed by the State Treasurer. These uniform charts of accounts are a separate document. As to the Budget Manual, Hackel makes no assertion that the Budget Manual was promulgated through formal rulemaking, and absent formal rulemaking, the manual "is not binding law, but merely guidance." See *Jim's Body Shop, Inc v Dep't of Treasury*, 328 Mich App 187, 200; 937 NW2d 123 (2019). See also MCL 141.440a(1) (providing, in part, that the Department of Treasury shall "publish *suggested* manuals . . . . which *may* be used by local units in complying with this act") (emphasis added).

available for Lucido's use unless the budget is amended to effectuate a transfer to Lucido's contract services budget.

Hackel failed to raise this argument in his supporting brief under MCR 7.206(D)(2)(b) or in response to Lucido's motion for summary disposition. To the contrary, in his brief, Hackel stated: "There is no dispute that the stated purpose of the $42,500 appropriation is to be available for use by the Prosecutor for outside legal counsel if the [*Macomb II*] litigation is resolved in his favor." Hackel made no mention of the purported necessity of a Budget amendment to make these funds available, and this argument is not properly before this Court. That is, the time to raise this issue was in response to Lucido's motion for summary disposition motion when, as the nonmoving party, Hackel was required to set forth specific facts showing that a genuine issue of material fact remained. See *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 374; 775 NW2d 618 (2009). In contrast, an amicus brief is limited to issues raised by the parties. MCR 7.212(H)(2). Accordingly, a party cannot—purportedly in response to an amicus brief or, in this case, in response to a motion to file an amicus brief—raise additional issues. See MCR 7.212(H)(2); *Ile v Foremost Ins Co*, 293 Mich App 309, 328-329; 809 NW2d 617 (2011), rev'd on other grounds by 493 Mich 915 (2012). In short, Hackel improperly attempts to raise new substantive arguments in the guise of opposing the Board's motion to file an amicus brief. We decline to consider these improperly presented arguments, particularly when Lucido had no opportunity to respond to these issues.

### III. REMEDIES

Given our conclusion that Hackel improperly impounded funds for outside legal services, as in *Macomb II*, ___ Mich App at ___; slip op at 12-13, we also conclude that the appropriate remedy in this case is a writ of mandamus directing Hackel to release the funds for outside counsel and instructing the parties to cooperate with regard to facilitating the appropriate contracts. Lucido's remaining request for injunctive relief and alleged violations of the appropriations act and other provisions are moot. See *id*. at ___; slip op at 14.

With regard to declaratory relief, declaratory relief is available "whether or not other relief is or could be sought or granted." MCR 2.605(A)(1). However, we conclude that Lucido abandoned his request for declaratory relief. Lucido's complaint mentions declaratory relief only once—in the title of the complaint. Lucido fails, however, to identify what declaratory relief is warranted in this case, and a request for declaratory relief is noticeably missing from Lucido's prayer for relief. See MCR 2.111(B)(2); *Wiggins v Burton*, 291 Mich App 532, 561; 805 NW2d 517 (2011). In his supporting brief, Lucido also fails to brief his request for declaratory relief. By failing to brief the issue, Lucido has abandoned his request for declaratory relief. See *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999). Moreover, whether to grant declaratory relief is within this Court's discretion, *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 550; 904 NW2d 192 (2017), and with his failure to adequately brief the issue, Lucido has not shown that declaratory relief is warranted in this case.

### IV. CONCLUSION

We conclude that Lucido's claims related to the funds for a Chief Operations Clerk lack merit because the Board conditioned this appropriation on the reclassification of the Office

Manager position and that reclassification did not occur.  Under MCR 2.116(I)(2), defendants are granted summary disposition as it relates to Lucido's claims involving the Chief Operations Clerk.

We also conclude that the Board appropriated $42,500 for Lucido to use to hire independent counsel and that this appropriation was not contingent on the outcome of *Macomb II*. The appropriate remedy for Hackel's improper impoundment of these funds is a writ of mandamus. Consequently, we grant, in part, Lucido's motion for summary disposition related to his request for mandamus in Count III of his complaint.  In all other respects, the complaint is denied.

We issue a writ of mandamus directing Hackel to disburse the funds to Lucido and directing that the parties work together to facilitate the appropriate contracts.

In light of our writ of mandamus, we deny Lucido's motion to enforce his complaint as moot.  We likewise deny Hackel's motion for partial dismissal.

This resolves the last pending claim and closes the case.

/s/ Allie Greenleaf Maldonado
/s/ Sima G. Patel
/s/ Adrienne N. Young

-15-